# MEYERS ET UX. v. ACME HOMESTEAD ASSOCIATION

---

(December 14, 1931. Opinion and Decree.)

Legiere, McEnerny & Waguespack, Delvaille H. Theard, Sol Weiss, Arthur J. Peters, Azzo J. Plough, Percival Stern and Charles J. Rivet, of New Orleans, attorneys for plaintiffs, appellees.

Puneky & Barrios and L. Walter Cockfield, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. This litigation was initiated by Mr. and Mrs. Meyers, former shareholders in a building and loan association, to recover a balance claimed to be due, or, in the alternative, damages because of the fact that the association, in complying with the request, did not include the dividends which the former shareholders claim their stock should have earned between the time they made application for withdrawal and the time at which they received payment.

The association maintains that payment was made strictly in accordance with its by-laws, by which plaintiffs are bound, and also that, in accepting the checks for their holdings, plaintiffs indorsed thereon a stipulation that the amount received constituted full settlement of the account.

On the books of defendant homestead association there had stood for several years an account in the name of "Joseph C. or Mrs. Anna G. Meyers." No certificates of stock were issued, since Mr. and Mrs. Meyers preferred to employ the "running share" system, under which all amounts standing to their credit were entered in a passbook issued by defendant association, and in which book all dividends earned were entered to the credit of the account.

On December 1, 1926, there stood in the said passbook to the credit of the said account $12,212.21. Between that day and December 2, 1930, earnings of the said stock were entered in the book, as well as three withdrawals of comparatively minor amounts, the result being that, on December 2, 1930, according to the book and according to the records of the association, there was a credit to the said account of exactly $12,900, and on that day, under circumstances which we shall hereafter narrate, the association issued two checks totaling that amount payable to "Joseph C. or Mrs. Anna G. Meyers," and the said checks were accepted and used by the payees.

Prior to that time, on October 22, 1929, there had been given to the association by Mr. and Mrs. Meyers a notice that they desired to withdraw such amount as stood on the association's books to their credit. However, the withdrawal request had not, prior to December 2, 1930, been complied with because, according to the officials of the association, there was not before that time cash on hand sufficient for that purpose, since there were other withdrawal notices prior to that of Mr. and Mrs. Meyers, which, under the charter and by-laws of the association and under the laws of the state, were entitled to prior consideration.

In paying to Mr. and Mrs. Meyers the sum of $12,900, the association issued two checks, one on the Hibernia Bank & Trust Company for $7,900, and one on the Poy-

dras street branch of the Whitney Trust & Savings Bank for $5,000. That two checks were used instead of one has no bearing on the issues now involved, since that was done to avoid the depletion of one bank account at the expense of the other.

Between the day on which the withdrawal notice was given by Mr. and Mrs. Meyers (October 22, 1929) and the day on which the checks for $12,900 were given to, and accepted by, them (December 2, 1930), certain dividends were declared and paid by the association, but no part thereof was credited to the Meyers' account; the association availing itself of the provisions of section 2 of article 4 of its by-laws to the effect that "All written notices of withdrawal shall be recorded by the secretary in the order in which they are received and all dividends, not already credited, shall cease upon filing of notice of withdrawal, and withdrawing shareholders shall be paid in rotation as registered, out of the first unappropriated money in the treasury."

Hereafter we shall refer only to Mr. Meyers as the plaintiff because, as the result of preliminary exceptions, the necessary amendments were filed to remove Mrs. Meyers as one of the plaintiffs, since it appears that the amount in question represents community property in connection with which the husband is the only necessary party.

When Meyers learned, on October 20, 1929, that no dividends would be paid on accounts for the withdrawal of which applications had been filed, he protested against what he considered the unfairness of being deprived of the right to obtain his money at once, and, at the same time, being refused the privilege of participating in earnings of the association; and it was not until two days later that he gave the notice of withdrawal, and even then, according to his testimony, he did so under protest.

According to the testimony of Mr. Ries, secretary-treasurer of defendant association, Meyers made no protest against being deprived of the right to share in the earnings, but was concerned only over the fact that he could not obtain his money at once.

It is not necessary to determine whether Meyers protested against not being permitted to participate in the dividends, because his rights are governed by the laws of the state and the charter and by-laws of the association, and were fixed by his withdrawal notice, and not by anything he may have said in connection therewith.

Each of the two checks issued by the association bore on the reverse the following:

"Full settlement of account detailed below BK 3649."

When these checks were indorsed by Mr. and Mrs. Meyers below the above-quoted stipulation, one of them, presumably Meyers, wrote in ink above their indorsement, "all rights reserved."

In one of the checks the word "all," apparently in the same handwriting as that in which is written the words "all rights reserved," is also written higher up, but it is evident that the party who wrote the word "all" did so because he had first intended to write "all rights reserved" in that space and then decided to write the words lower down; so we find that no significance can be attached to the lone word "all" on one of the checks.

Thereafter this suit was filed. It has for its object the recovery of a sum of money equivalent to the dividends which would have been earned by the "running shares,"

or money on deposit between the date of the withdrawal notice and the date of the actual withdrawal, had the homestead association allowed to stock, for the withdrawal of which application had been made, dividends equivalent to those paid to other shareholders. The amount claimed is $1,059.32. As an alternative claim, in the event it be held that the stock in question is not entitled to dividends during that period, then it is averred that the association violated the law of Louisiana (section 7 of Act 280 of 1916) in not setting aside for the payment of withdrawal applications the proportion of receipts required by law, and it is contended that, had the association set aside for such withdrawals one-half of its receipts, then the withdrawal in question would have been consummated some nine months earlier, in which event the proceeds would have been invested and would have earned, at six per cent, $530.50, and this amount is claimed in the alternative as damages, which plaintiff alleges have been sustained as the result of the alleged violation by defendant of the pertinent section of the statute to which we have referred.

Defendant has not answered to the merits of the controversy, but has interposed a plea of estoppel, and on the trial, and in support thereof, has introduced evidence establishing the facts which we have recited.

Defendant, in the plea of estoppel, maintains, first, that as a member of the association plaintiff is bound by the charter and by-laws thereof, and is estopped to claim more than is permitted by those documents; second, that by accepting from defendant checks for $12,900 bearing the indorsements showing that these checks constituted payment in full of the entire account, plaintiff is now estopped to claim that from the said account more is due him.

In answer to the first contention, plaintiff maintains that he has alleged and should be permitted to prove that defendant itself has violated its own rules and regulations, as well as the state law, with reference to the payment of withdrawal applications, and thus cannot be permitted to shield itself behind those regulations.

In answer to the second contention, plaintiff counters with the charge that no estoppel to claim more can result from the acceptance of a sum admittedly due, and that he is not estopped to contest the finality of the settlement of the account by reason of the indorsement on the checks because he rendered that indorsement null and ineffective by writing thereafter the reservation "all rights reserved."

We will consider, first, the counter charge of plaintiff to the effect that, by writing the words "all rights reserved," he maintained in himself the right to contest the finality of the settlement.

We find it necessary to devote little time to this contention, because the law appears to be well settled that one, to whom a check is tendered containing such a stipulation, must either accept or reject the stipulation, as written, and may not obtain the benefit of the check and, at the same time, avoid the obligation resulting from the stipulation by adding other stipulations intended to nullify the first. In Beck Electric Construction Co. v. National Contracting Co. et al., 143 Minn. 190, 173 N. W. 413, the check tendered contained the stipulation that it was "in full for painting," etc. The payee drew a pen line through the words "in full" and indorsed and cashed the check. The court held that the erasure of the words "in full" had no effect.

In Boosin v. Bird Dress Co., 119 Misc. Rep. 701, 197 N. Y. S. 254, the payee of

a check marked "in full settlement" indorsed on the check "received this check on account." The court held that the indorsement had no effect whatever.

The rule is stated in Corpus Juris, vol. 1, p. 564, as follows:

"The erasure or alteration of the condition expressed in a check by the creditor without notice to and assent by the debtor will not prevent its acceptance from constituting an accord and satisfaction, since, if the creditor were allowed to accept it for a different purpose than that allowed, it would be to allow him to make a contract with defendants without their knowledge and consent."

Thus we find that the attempt by plaintiff to qualify his acceptance of the checks was ineffective, and that the respective rights of the parties remained just as they were, regardless of the insertion by Meyers of the words quoted.

What, then, were those rights? Meyers says that, since the homestead at all times admitted an indebtedness to him of $12,900, it was bound to pay him that amount at all events, and that it had no right to make payment of an admitted debt conditional upon the waiver by the payee of his right to claim an additional sum.

Whether, under such circumstances, there has been an accord and satisfaction, or, as it is known in our Code, a transaction and compromise, depends largely upon whether the claim which one of the parties maintains against the other is liquidated, or unliquidated, and upon whether there is a real dispute as to the amount due.

If a claim is not liquidated, even though it appears that something is admitted to be due, the payment of the amount admittedly due, coupled with a stipulation that the payment constitutes a full settlement, is accepted in most jurisdictions as an accord and satisfaction, provided there was a bona fide dispute over the balance of the claim.

There are, it is true, some decisions to the effect that, if one party admits owing to the other a certain sum, he cannot refuse to pay that sum, except upon exacting from the other party a receipt in full for all differences between them. In these cases, no consideration for the accord and satisfaction is found. But, even in those cases, it seems that the transaction out of which the admitted indebtedness arose had no relationship whatever to that out of which arose the controversy over the other portion of the claim.

In Ruling Case Law, vol. 1, p. 198, we find that the majority rule seems to be:

"A demand, however, is not liquidated, or undisputed, even if it appears that something is due, unless it appears how much is due; and when it is admitted that one of two different sums is due, but there is a genuine dispute as to which is the proper amount, the demand is unliquidated within the meaning of that term as applied to accord and satisfaction."

Similarly, in Corpus Juris, vol. 1, p. 555, is found, illustrative of the preferred rule, the following:

"* * * Where an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole."

To the same effect is the decision in Nassoiy v. Tomlinson, 148 N. Y. 326, 42 N. E. 715, 51 Am. St. Rep. 695, in which a defendant admitted owing a specific fixed amount. Plaintiff claimed another specific fixed larger amount. One of the two amounts was due; either the smaller or the larger. There was no middle ground. Defendant paid the smaller, which he admitted he owed. Plaintiff accepted the smaller, and

then sued for the difference between that and the larger. The court held that there had been an accord and satisfaction. As stated in a note on page 556 of Corpus Juris, vol. 1, the facts and holding in that case were as follows:

"Plaintiff claimed a commission of five per cent for selling defendant's farm. Defendant did not dispute the employment or the rendition of the services, but controverted the rate of commissions; he conceding his liability for one per cent. Defendant inclosed a check for three hundred dollars to plaintiff, that being the amount of the commissions figured at the rate of one per cent, with a blank receipt reciting that it was in full, which he requested plaintiff to sign and return. Plaintiff used the check and did not sign or return the receipt. The court held that this was an unliquidated demand within the rule, and that it did not become a liquidated demand, even as to the amount for which defendant conceded his liability; and, although defendant received no benefit, having paid only the amount which he did not dispute, yet it was held that constituted an accord and satisfaction."

It is difficult to ascertain what is the consideration given in such case for the accord and satisfaction, and since in Louisiana a real consideration is required to form the basis of a contract, our ingenuity would have been taxed to discover the consideration for the accord and satisfaction, which defendant contends for here, were it not for the fact that the Supreme Court of our state has followed the majority rule, as is evidenced by the decision of that court in Berger v. Quintero, 170 La. 38, 127 So. 356, 357. There the dispute was between attorney and client. It must be conceded that the duty owed by an attorney to his client is more sacred than that exacted by the courts from a homestead association to its members. Nevertheless it was held that a full accord and satisfaction had resulted from the acceptance by the client of a check sent by the attorney for an amount admittedly due, and which check was sent in connection with an account showing that the check was intended to represent a full settlement between the parties. It was contended that, since the attorney admitted that he owed the amount represented by the check, it was his duty to pay that sum unconditionally, and that he had no right to make the payment of that admitted amount conditional upon the release of all other claims. The court said:

"The plea of estoppel, in our view, is well-founded. The claim was a disputed one. If plaintiff was not satisfied with the settlement tendered, he should not have retained the check, and caused it to be certified by the Bank upon which it was drawn, but should have returned it, in the absence of a waiver of the condition attached to the remittance."

In Sentell v. Wilcox, 3 Orl. App. 507, this court followed the majority rule. We quote from Judge Dufour as follows:

"The principle is thus stated in 1 Cyc. of Law and Procedure, p. 333:

" 'Where, however, a sum of money is tendered in satisfaction of the claim, and the tender is accompanied with such acts and declarations as amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that if he takes it he takes it subject to such condition, an acceptance of the money offered constitutes an accord and satisfaction. This is true, although the creditor protests at the time that the amount paid is not all that is due, or that he does not protest at the time that the amount paid is not all that is due, or that he does not accept it in full satisfaction of his claim. Where the tender or offer is thus made, the party to whom it is made has no alternative but to refuse it or accept it upon such condition. If he accepts it, he accepts the condition also, notwithstanding any protest he may make to the contrary.'

"And in Id. note 72, p. 333, it is said that 'according to the weight of authority, where a claim is in dispute and the debtor sends

or gives the creditor a check for a less sum, which he declares to be in full payment of all demands, the retention thereof by the creditor constitutes an accord and satisfaction.'

"In this case the giving of the checks was made on condition that they would be received in settlement and not in part payment of the disputed account; with full knowledge of that condition, Sentell kept the checks and practically converted them into money by having them certified and thus placing the amount exclusively within his control.

"It was his privilege either to return the checks and sue for the whole amount, or to keep them and accept the condition; he made his choice and must abide by it."

It seems, then, that no matter how well established and no matter how irrevocably admitted the smaller sum may be, if, growing out of the same or a clearly related transaction, there is a real dispute as to whether a larger sum is due, the debtor may, in paying the admitted sum, demand a full release from any other claim growing out of the same or a clearly related transaction, and that, if such release is given, it constitutes accord and satisfaction. Here we find that there was only one account between the parties. This account had been running for a very long time, and the dispute was really one over the question of the correctness of the account.

Following the majority rule and the rule laid down by our Supreme Court, and also followed by this court, we find that there was a full accord and satisfaction, and that the consideration therefor was the satisfaction which came from the putting an end to litigation and from the termination of the dispute.

Much is made over the alleged want of equity in the situation which results from the enforcement by defendant of its by-law provision, to the effect that stock subject to withdrawal shall not share in divi-dends; but it should be borne in mind that homestead associations are co-operative and that stockholders therein are members thereof. For their own benefit they have sought outlets for investment, and they should remember that no returns can be made on their investments unless the cash which they have invested in homestead stock be in turn invested by the homestead association in long-term loans to borrowers. Where those who have invested in homestead stock demand the return of their money, it is manifest that the homestead association must be accorded time to accumulate cash for that purpose. If the association retained the cash in its coffers, no earnings for stockholders could result. Likewise, when the stockholder demands the return of his investment and the homestead association commences to accumulate cash to comply with the demand, it can earn no return on the cash being accumulated and, necessarily, can pay no return to the stockholders for whose benefit and on whose request the cash is being accumulated.

Whether the homestead, in this particular case, can take advantage of the estoppel which results from the enforcement of its by-laws, we find it unnecessary to determine, and we need do no more than say that, as a general rule, there can be no doubt that one who joins such an association is bound by the laws with reference thereto and by the charter and by-laws thereof.

It is not necessary, however, to decide the case on that question, because here we find that a complete estoppel resulted from the acceptance of the checks bearing the indorsement to the effect that they were paid in full settlement of the account.

The judgment appealed from is affirmed, the plea of estoppel is maintained, and plaintiff's suit is dismissed at his cost.