## MERCHANDISE REPORTING CO., Inc., v. WEISS & GOLDRING.
### No. 5256.

Court of Appeal of Louisiana.
Second Circuit.
June 2, 1936.

George Ginsberg, of Alexandria, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiff conducts a general merchandise reporting and buying business in the city of New York for its customer merchants without the city. Defendant conducts a department store in the city of Alexandria, La. On January 18, 1922, defendant executed a "service agreement" with plaintiff, of which the following is a copy:

"We hereby enter our subscription to your Resident Buying and Merchandise Service for a period of one year, commencing January 1st, 1922, terminating December 31st, 1922.

"This Service shall include:—

"Your semi-weekly merchandise reports. Our special shopping. Confirmation of our orders. Packing and shipping. Office accommodation for our buyers when in New York.

"It is also agreed that, in consideration of the yearly Service Fee, mentioned below, we are to have the privilege of buying any and all merchandise stocked by you.

"All merchandise so ordered by us from you, to be billed by you and paid by us within ten days.

"For the above Service we agree to pay you a yearly fee of $900.00, payable $75.00 on the first of each month.

"It is further mutually agreed that this contract shall continue in force from year to year, unless termination notice is given by either party, thirty days prior to the expiration of the yearly period (notice by registered mail shall be deemed sufficient), after receipt of which this agreement becomes null and void."

The terms of this contract were observed and continued in effect between the parties, without any suggestion of modification, until about August 1, 1932. The depression's effect on defendant's business caused it to ask for a reduction of the stipulated fee. On August 3d, plaintiff addressed a letter to defendant, from which we quote the following pertinent to the main issue in this case:

"Referring to your request for a reduction of our fee.

"We wish to respectively (respectfully) call to your attention that your service agreement terminates December 31st, provided we receive at least thirty days' notice prior to above mentioned date.

"Even though we hold a service agreement that has some time to run yet, we will be glad to take a reduction under consideration if you will advise us just how much of a reduction you have in mind.
* * *

"Because of the friendly attitude you have always shown towards us, as mentioned above, we will take a reduction under consideration if you will advise us just what you have in mind."

In reply to this letter of August 3d, defendant wrote plaintiff as follows:

"I am in receipt of yours of the 3rd and note contents. In reply will say that I do not know of any contract we have that expires December 31st. However, that has nothing to do with the reduction of our fee that I requested. Many parties having contracts or leases have had same cancelled or lowered. I feel as you do, however, our relations have been pleasant in the past and I hope they will continue in the future. I shall not be hard-boiled, but feel that a 20% reduction, or $60.00 fee, from now on will be fair."

Plaintiff's reply contains the following:

"You originally paid us $100.00 per month. Then it was reduced to $75.00. You now ask us to reduce to $60.00 per month. As we are willing to meet you more than half way, we suggest a fee of $66.67 per month. * * *

"The reduction we offer you is a little better than 11% when compared to the fee you are now paying. Service agreement in duplicate (calling for the reduced fee) is herewith attached. When you have signed same, please return to us. We will then affix our signature and return one copy for your files, at which time we will make record to the effect that starting with September 1st we are to invoice our service to you at the monthly fee of $75.00, less a monthly credit of $8.33 for four months, up to and including the last month of this year, after which date the new service agreement at the reduced fee will be in force."

· The service agreements referred to in this letter were not executed by defendant. The document embodying the agreement is in the record. It contains all of the covenants of the agreement of January 18, 1922. Reduction of the monthly fee to $66.67 was accepted by defendant and in the letter doing so, it stated:

"For the time being, at least, I do not want to sign any contract."

Thereafter, the fee, at defendant's request, was reduced to $62 per month, and in plaintiff's letter of January 23, 1933, referring thereto, it is stated:

"Referring to your request for a third reduction of our fee.

"We wish to respectively (respectfully) call to your attention that your service agreement terminates December 31st, provided we receive at least thirty days' notice prior to the above mentioned date. * * *

"Even in the face of the service agreement we hold and all the work we receive from you (which is a lot for the fee we get), we would not hesitate to reduce our fee to help you out if we too were not having our difficulties."

Replying to this letter, defendant, inter alia, says:

"I am in receipt of yours of the 23rd and note contents. * * *

"When I asked for a cut last year, I expected you to give us one of at least 20% which would have brought same to $60.00 per month. You did not see your way clear, at that time, to reduce our fee but $8.33 per month and as I did not want to be stubborn, I paid same up to date."

In a letter from plaintiff, February 3, 1933, defendant's attention is again directed to the fact that there was a service agreement in effect between them. It is said therein:

"Even though your service agreement terminates December 31st, provided we receive at least thirty days' notice prior to the above mentioned date, and even though we cannot afford to reduce our fee, we have decided to give you a reduction as of March 1st, if you will sign the service agreement we are attaching in duplicate. When you have signed same, please return to us. We will then affix our signature and return one copy for your files."

The agreement therein referred to was not signed by defendant and on February 28, 1933, it wrote to plaintiff as follows:

"Enclosed find check for services of January and February. In the future bill us $62.00 per month as per your letter of February 3rd.

"We do not care to sign any contract. We know that you would not want us to be connected with your office if same would be unsatisfactory, which we know will not be the case. On the other hand, if you care to cancel our connections, you are at liberty to do so."

Replying to this letter, plaintiff said:

"We are herewith attaching a credit memorandum for $13.00 to be applied against our March service bill.

"In your letter of February 28th, you state that you do not care to sign any contract. We wish to respectively (respectfully) call to your attention that we have a contract from your concern which is still in force."

The matter appears to have rested in the condition reflected from these last letters, until March 23, 1934, on which date plaintiff wrote as follows:

"On February 13th, we wrote you as follows:

"For quite some months past we have been sending you a credit bill to apply against your monthly service fee.

"Upon going over our records, we find that the amount of work that we are doing for your store warrants the total fee. * * *

"Even though we did not send you a credit bill for March, you took the deduction in your last remittance. We started increasing our fees last July and we are very happy to say that those of our clients that we approached to date cooperated with us because they saw the justice of our request. According to our records, your store should be paying us at least $93.50 per month. You can therefore readily see that we are very reasonable because we only request that you pay us $75.00 per month."

On July 27, 1934, defendant sent plaintiff by registered mail a letter of which the following is a copy:

"This is to notify you to discontinue your service to us after August 31, 1934.

"We want you to know that we have no complaint to make against you or your force."

Replying thereto, plaintiff, among other things, said:

"You write 'this is to notify you to discontinue your services to us after August 31st, 1934.' We are at a loss to understand the above quotation because you are not at liberty to discontinue our arrangement before December 31st. We respectfully refer you to your copy of our service agreement with you."

To which defendant replied:

"I am in receipt of yours of the 4th and note contents. In reply will say that when we received Miss Richek's letter of July 30th, I thought that she did not know that we did not have an agreement with your company for any specified time, so I waited until I heard from you, and now I am surprised to note that you also claim that we have a service agreement. I am not aware of any such agreement but on the contrary I have before me a letter dated February 28, 1933, in which I especially mention that I would not sign a contract."

And again, on September 8, 1934, defendant addressed the following letter to plaintiff:

"Enclosed find check for $78.00, being for services and postage for the month of August and in full settlement as formerly written you."

Other letters on the subject passed between the parties, but their contents throw no additional light thereon.

Plaintiff then brought the present suit on the original service agreement to recover a fee of $75 per month for the months of September, October, November, and December of the year 1934. After reciting the history of their relations with defendant under the service agreement which, it is alleged, was never abrogated or modified, save as to the monthly fee, and acknowledging receipt of the letter of July 27, 1934, plaintiff alleges:

"VI. Petitioners now show that although, since that date, standing continually ready and willing to perform said services, defendants herein have summarily breached the contract, above referred to, contrary to its specific terms, and that said contract still had not expired for the year 1934, nor had been properly terminated according to the provisions thereof, and for the year 1934 had still four (4) months to function, during which four months your petitioners stood ready and willing to perform, and which services your defendants refused to accept, and despite amicable demand, have refused to pay the balance of the yearly consideration of said contract."

Defendant in limine filed and urged pleas of estoppel and res judicata which, after trial, were overruled. The former is predicated upon a state of facts disclosed from the following allegations therein:

"1. That its letter of July 27th, 1934, written to plaintiff herein, which letter is annexed to plaintiff's petition, was written only after considerable correspondence had passed between the parties hereto, and particularly after some discussion had been had between the parties as to whether or not there was, in fact, a contract in existence between said parties; that in said correspondence plaintiff had taken the position that it did, in fact, have a contract which was still in existence, while defendant had contended that no contract was in existence; that defendant had refused to sign a new contract, which had been sent to it by the plaintiff for its signature; that the defendant in this correspondence had always maintained that it had a right to terminate its arrangements with plaintiff at any time it desired, and particularly upon thirty days' notice.

"2. Mover shows that acting in accord with what it contended to be its legal rights, it wrote the letter above referred to, terminating the buying arrangements which it had with plaintiff, as of August 31, 1934; that it desired to give plaintiff thirty days' notice before it terminated the arrangements. Mover shows, however, that during the latter part of July and during the entire part of August, no service of any kind was rendered by the plaintiff to the defendant.

"3. Mover shows that after the plaintiff received the letter of July 27th, above referred to it continued to write letters to this defendant, contending that it did, in fact, have a contract in force through the month of December, 1934, which contention this defendant answered, continuing in its detail thereof.

"4. Mover shows that thereafter on September 8, 1934, it wrote to the plaintiff as follows, to-wit:

"'Enclosed find check for $78.00, being for services and postage for the month of August, and in full settlement as formerly written you.'

"Mover shows that the original of this said letter is annexed to plaintiff's petition; that in accordance with the terms of said letter, it paid the plaintiff all sums which it owed it, or which plaintiff might have claimed it owed it because of any supposed

contract which had formerly existed between the parties.

"5. Mover shows that the check which it enclosed in its letter of September 8th, was cashed by the plaintiff, and that the proceeds thereof have been retained by the plaintiff; that accordingly plaintiff is now estopped from claiming anything further from this defendant because of said supposed contract of employment, as aforementioned."

The plea of res judicata is based upon conclusions of law drawn from said related facts, as is reflected from the allegations of the plea, to wit:

"6. Under reservation of the above and foregoing plea of estoppel, mover shows that the retention of said funds by the plaintiff herein, under the circumstances above set forth, after having been notified that said money was sent in full settlement, constitutes a discharge of any other sums which plaintiff might have claimed, and that therefore the said issues have been settled, compromised and discharged; that this transaction has the effect of res judicata as to the issues between the parties."

Reserving its rights under said pleas, defendant answered. Execution of the contract with plaintiff is admitted, but it is averred that after a protracted correspondence between it and plaintiff, the contract, as one continuing from year to year, was canceled by it; and that thereafter the contract between them was on a month to month basis, of which fact due and timely notices were given plaintiff. It is expressly averred that on July 27, 1934, the then existing month to month arrangement, as of September 1, 1934, as it had the right to do, was canceled by defendant; that through August, 1934, plaintiff was paid all sums due it, which were by it accepted as a full settlement of the financial differences between them, and by such acceptance, plaintiff is legally and equitably estopped from claiming more which estoppel is specially pleaded.

The demands of plaintiff were rejected and its suit dismissed. This appeal is prosecuted by it.

The pleas of estoppel and res judicata were submitted to the lower court on correspondence between the parties, quoted from above, and on the admission that plaintiff had received and cashed the check for $78 referred to in defendant's letter of September 8, 1934, and retained the proceeds thereof. Defendant contends that when it paid plaintiff the $78, there was a substantial dispute between them, arising from their business relations, as reflected from the contents of the correspondence in the record, and that having accepted said payment, made for the purpose and reason disclosed from the letter transmitting same, plaintiff is now estopped to claim or assert that any additional amount is due it and that said payment and its acceptance, under such circumstances, had the effect of a compromise of the referred to differences between the parties, and hence has the force of the thing adjudged. Defendant relies upon Berger v. Quintero, 170 La. 37, 127 So. 356, 357, and Meyers v. Acme Homestead Association, 18 La.App. 697, 138 So. 443.

In the Berger Case, defendant, a member of a legal firm, was paid several thousand dollars for plaintiff's account. Plaintiff was indebted to the firm for valuable legal services rendered to him. Defendant made up an itemized statement of the amount he considered due his firm and for costs expended in plaintiff's behalf, and mailed the statement, with check for balance due, to him with a letter stating that the check was intended to cover said balance. He retained the check, without protest, for three years, had it certified by the bank on which it was drawn, and then instituted suit for the balance he claimed defendant was due him. In sustaining a plea of estoppel, the court said:

"The plea of estoppel, in our view, is well founded. The claim was a disputed one. If plaintiff was not satisfied with the settlement tendered, he should not have retained the check, and caused it to be certified by the bank upon which it was drawn, but should have returned it, in the absence of a waiver of the condition attached to the remittance. By retaining the check, and causing it to be certified, he is now precluded from rejecting it, and suing defendant upon the entire claim."

In the Meyers Case, the court upheld a defense of accord and satisfaction, where it was shown that checks in payment of amounts admitted to be due plaintiff were issued and delivered to him wherein was written, "full settlement of account detailed below B K 3649"; and which he indorsed with the qualification "all rights reserved," and collected. Adding these words to his endorsement was held to be

ineffective. It was held that if not satisfied with the checks, he should have refused to accept them.

It is apparent that the facts of these two cases are wholly dissimilar to those in the instant case. Defendant's letter of July 27, 1934, notified plaintiff to discontinue its services to defendant after August 31, 1934. Defendant was then under the belief that the contract between them was subject to termination in this manner. There was then no dispute as to the amount defendant would owe on August 31st. Defendant had long prior been advised that the fee fixed by the original contract, of January 18, 1922, had been reinstated. The letter inclosing this amount, plus $3, definitely states that the payment was for services and postage for the month of August. It is true that "and in full settlement as formerly written you" was included in the letter, but this merely reflects the belief on the part of defendant that nothing further would be due by it under the contract subsequent to August 31, 1934, because, as it thought, the notice of July 27, 1934, put an end to its obligations thereunder. It does not mean that defendant believed it would not be obligated to pay this amount until January 1st following if its obligations to plaintiff were not terminable at defendant's will. The dispute between the parties involved the right to terminate the contract, not the monthly amount due under it. So when plaintiff accepted defendant's check, it did so as the payment admitted by both sides to be due for the month of August. This left open and unaffected the controverted question of defendant's right or lack of right to cancel the contract before the year expired. The transaction has none of the earmarks of a compromise. There was no agreement between the parties to adjust their differences in the manner defendant contends for; and there was no discussion of a compromise to prevent a lawsuit. Article 3071, Civ.Code; Coco v. Moss Co., 4 La.App. 645.

The parties are in accord that to abrogate the service agreement sued on, it was necessary for either party to give notice to that effect at least thirty days prior to the expiration of the year in which the notice was given. In other words, unless notice of intention to terminate the contract was given not later than December 2d, the life of the contract would be automatically extended for the following year; and since defendant gave notice of its purpose to cancel the contract on July 27, 1934, the question arises: Had the contract been renewed or continued for the entire year 1934, or had it been modified by correspondence to one of month to month as to term?

A careful perusal of the letters between the parties clearly discloses that the only portion of the original agreement affected thereby is that relative to the amount of fees payable under the agreement. These were lowered twice and then raised to the original amount. Payments were made by defendant under each change. In several letters, the attention of defendant was directed to the fact that there was a contract in force which could only be terminated in the manner therein specified, viz.; by giving the thirty days' notice prior to the end of the year. The new contracts tendered defendant for execution were not different in conditions to the old one, save as to the monthly fee to be paid thereunder. Defendant at first contended there was no contract to be canceled, and then shifted to the position that there was one which ran from month to month. Mr. Morris J. Weiss, secretary-treasurer, and general manager of defendant corporation, gave the following testimony touching what defendant did and did not do to terminate the contract prior to September, 1934:

"Q. I will ask you again, Mr. Weiss, to answer me directly; did you notify them by registered mail before July 27, 1934, in accordance with the terms of this contract that I have just read, at least thirty days before the end of the year, of any year, that you desired this contract cancelled?

"A. I did not.

"Q. Then the first registered notice or written notice to them formally and directly notifying them to cancel the contract was on July 27, 1934, by the letter that you wrote them in New York by registered mail?

"A. May I say that we had a conversation in New York, Mr. Krewson and I, where I told him I couldn't pay that amount, that was before that.

"Q. In 1934?

"A. That was in '32 or '33. I told him that we could not continue and that if they could not give us a lower rate that we would have to make the change.

"Q. But you did not terminate the contract by that proper notice?

"A. I answered the question by saying I didn't know I had a contract with that concern.

"Q. You did not actually write such a notice or give them such a notice?

"A. I couldn't because I didn't know I had a contract; I didn't know it was in existence.

"Q. But you don't deny it?

"A. I suspect that it's there, you have it right before you."

This testimony proves two facts, viz.; that defendant had forgotten that the service agreement of 1922 had been executed by it, and that no definite notice to end its existence was given prior to July 27, 1934. It is admitted that no services under the agreement were rendered to defendant after September 1, 1934, but it is also admitted that plaintiff was ready, willing, and able to render the same services after this date as it had done prior thereto. It only remained for defendant to make requisition therefor in order to receive same.

Defendant makes the point that plaintiff is not a party to the contract sued on, contending that same is between defendant and the Merchandise Reporting Company, and not between it and the Merchandise Reporting Company, Inc. In its answer, defendant admitted that it did sign with plaintiff the contract sued on. It now contends that certain testimony introduced without objection had the effect of broadening the pleadings and of destroying the conclusiveness of the admission. We think this position without merit. Mr. Weiss gave testimony to the effect that his company prior to 1922 had dealt with James T. Leonard & Co., a concern in New York City, which was afterwards bought out by Alexander & Meyer, who operated under the trade-name of Merchandise Reporting Company. He had no knowledge of this firm's corporate character, but evidently it is a corporation. It is common knowledge that corporations frequently do not use the words "incorporated" or "limited," which form a part of its corporate name. In one place in the contract the word "incorporated" is omitted, while in another place, it appears. We think the admission made in defendant's answer foreclosed the question.

We are of the opinion that plaintiff is entitled to recover and, for the reasons herein assigned, the judgment appealed from is annulled, avoided, and reversed; and there is now judgment for plaintiff, Merchandise Reporting Company, Inc., and against defendant, Weiss & Goldring, a corporation, for the sum of $300, with legal interest from judicial demand herein until paid, and for costs.