This is a suit for damages arising out of a building contract which was made by the plaintiff, Ernest M. Schultz, as owner, with Martin G. Gund as contractor.
The particular complaint of plaintiff is that the contractor installed a defective heating system in his residence at #530 Harrison Avenue in New Orleans and that, as a result, he has been damaged in the sum of $832, which is alleged to be the cost of repairing the system so that it will perform the functions guaranteed by the contractor in the plans and specifications of the building contract. The contractor, Gund, and his surety, the U.S. Fidelity and Guaranty Company, are made parties defendant to the action.
Denying that the heating system installed in plaintiff's residence is defective or that it failed to comply with the guarantee set forth in the specifications of the building contract, the defendants alleged that the system was installed by Holzer Sheet Metal Works, a copartnership, under a subcontract; that the latter be called in warranty and that, if it should be held that plaintiff's complaint is well founded, they have judgment in warranty against the sub-contractor. In addition, the defendant Gund filed a reconventional demand in the sum of $146.71 for furnishing certain extras which were not included in the building contract and for which he had not been paid.
On the allegations contained in defendants' answer, an order was issued by the trial judge calling the sub-contractor, Holzer Sheet Metal Works, in warranty. In due course, the Holzer Company appeared in response to the call in warranty and admitted the subcontract but denied that the heating system installed by it was in any wise defective or that it did not comply with the terms and conditions of its agreement. In addition, it set forth other defenses which we shall hereinafter consider.
On the issues thus formed by the pleadings, a protracted trial was had at which many motions and other pleas were interposed by the defending litigants. After due consideration of these pleas, the evidence and arguments, the trial judge entered a decree in plaintiff's favor against Gund and his surety for damages in the sum of $610 with interest and attorneys' fees and further granted judgment in favor of Gund and his surety against Holzer Sheet Metal Works, defendant in warranty, for a like amount. The reconventional demand of Gund was dismissed. From the adverse judgment, defendants and Holzer Sheet Metal Works have appealed.
As heretofore stated, numerous points and contentions have been made by appellant, Holzer Sheet Metal Works, in which it advances some six grounds for a reversal of the decree below. The complaints of the other appellants, Gund and his surety, are of a similar nature. We do not find it necessary to state or discuss all of these contentions inasmuch as a perusal of the record has been sufficient to disclose that there is no merit in most of them. We shall, therefore, confine our discussion to the three main points set forth by appellant, Holzer Sheet Metal Works, in its brief, viz.:
(1) That its commitment as sub-contractor was based upon its accepted bid, the terms and conditions of which contain no guarantee whatsoever.
(2) That, subsequent to the acceptance of its bid, the plaintiff, without its knowledge and consent, changed the specifications of the main contract, which called for a *Page 684 
brick veneer outer surface of the house, to a stucco surface and that this change relieved it from any obligation to comply with the guarantee contained in the specifications, respecting the heating system, and
(3) That, if liability exists on its part, the quantum of damages is excessive.
Examination of the record discloses the following facts which are not open to serious dispute: During the latter part of 1940, plaintiff, being desirous of building a home, employed an architect, Mr. Edward F. Sporl, Sr., to prepare plans and specifications and let out a contract for the work. Mr. Sporl accepted this employment, undertook to draw the necessary plans and specifications and to receive bids in order to ascertain the cost of the residence. On October 1, 1940, he received a bid from Holzer Sheet Metal Works in which it quoted the price of $441 for the installation of a warm air heating system, supplying a heater manufactured by the American Furnace Company. This bid was not accepted until some time after February 5, 1941, when plaintiff entered into a building contract with the defendant, Gund, wherein the latter agreed to construct a residence for plaintiff for the sum of $9380. The specifications attached to and made part of this building contract provided for the installation of a re-circulating warm air control heating system and the furnishing of one No. 220-A Lo-Boy "Quaker" oil burning furnace, or equal. It was further provided in said specifications that "The above system is to be guaranteed to keep the building at 70° F. dry bulb temperature when the outside temperature is 30° F. dry bulb temperature".
Upon the acceptance of its bid, Holzer Sheet Metal Works undertook to install the heating system set forth in its offer. The record is indefinite as to the date in 1941 when the heating system was installed but the vast preponderance of testimony shows that the heating work was performed at a time when the building was practically completed. After the completion of the residence, performance under the contract was accepted by plaintiff and the defendant, Gund, received final payment of the balance due him on October 29, 1941. Shortly after plaintiff took occupancy of the house, it was discovered that the heating system did not bring the temperature up to the guarantee set forth in the specifications. Thereafter, he made numerous complaints to Holzer Sheet Metal Works that the house was inadequately heated during the cold weather; that it took from five to six hours for the upstairs portion of the premises to become comfortably warm and that the living room temperature did not at any time reach the required 70° as stipulated for in the guarantee. Holzer Sheet Metal Works responded to these complaints and, on at least two or three occasions during the winter of 1942, sent mechanics to plaintiff's home to make necessary corrections in the heating system. None of the attempted repairs and changes made by the sub-contractor was successful and, in July of 1942, Mr. R.J. Holzer, as President of sub-contractor company, wrote a letter to plaintiff in which he stated that, having been notified by plaintiff of the defects in the heating system and that plaintiff proposed to file a claim against the contractor and his surety because of these defects, the Holzer Company, as sub-contractor, recognized its obligation in the premises and that it agreed to put the heating system in working order by October 15, 1942. The letter further states that the Holzer Company "agree to balance the heating system, and guarantee to you that it will keep the rooms to be heated at the temperature guaranteed in the original contract, viz. to keep these rooms at 70° F. dry bulb temperature when the outside temperature is 30° F. dry bulb temperature." In conformity with its promise as set forth in this letter, the Holzer Company made further changes and repairs to the heating system. However, none of this additional work remedied the defective condition. Under these circumstances, plaintiff, feeling that he could not obtain satisfaction for his damages without the aid of the courts (and justifiably so), filed the present action. It further appears that, even after the suit was filed, plaintiff, in an effort to give the defendants every opportunity to rectify the defective heating system, made an agreement with them to withhold action in the case and give the Holzer Company another chance to comply with the contract. This agreement was confected on November 3, 1942. On that date, the Holzer Company, acting through Mr. R.J. Holzer, President, wrote another letter to plaintiff in which admission is again made of the inadequacy of the system and its obligation to install one complying with the specifications of the building contract and agreed, in consideration of plaintiff withholding action in this *Page 685 
case, to correct the defects on or before November 12, 1942. Upon the representations contained in this letter, additional changes and repairs were made to the system but to no avail.
It seems clear that the facts of the case, which we have above set forth, afford a complete answer to the protestations of the Holzer Company that it is not legally responsible under the sub-contract. The evidence plainly reveals that the heating system installed by it is not only inadequate to provide the warmth stipulated for in the specifications of the building contract but that it, as sub-contractor, has, at all times prior to the trial of this case, admitted its dereliction. Furthermore, the irrebuttable facts are that the Holzer Company took cognizance of the specifications of the building contract and the guarantee therein and that it has many times, in writing and otherwise, recognized its obligation to install a heating system which would comply therewith. Under such circumstances, the contention now made, that it is not bound as sub-contractor because the guarantee is not contained in its bid for the installation of the system, is without substance.
The second point advanced by the Holzer Company is that the original plans and specifications for the plaintiff's residence, which provided for the outer surface of the house to be of brick veneer, were changed to provide for an outer surface of stucco without its knowledge and consent; that the evidence shows that a brick veneer home is heated more readily than one built of stucco and that this change constitutes a material alteration in the work which releases it from the provisions of the guarantee. We find no merit whatever in this point. In the first place, the record shows that the original contract was not signed between the owner and contractor until after the change from brick veneer to stucco had been provided for. Secondly, the heating system was not installed until after the house was nearly completed and the agents of the Holzer Company who made the installation were well aware of the fact that the outer surface was stucco. This is particularly true of defendant's employee, Mr. Gaunt, who supervised the installation of the system. In addition, we find that this defense, like the other defenses of the Holzer Company, is a belated one and that it has estopped itself by admissions of liability, through correspondence and otherwise, from now asserting this contention. Not once, in the letters which were sent by it to the plaintiff both before and after suit was filed, did it ever assert that its failure to comply with the guarantee contained in the specifications was due to the change in the construction of the outer surface of the residence.
Before we consider the question of damages sustained by plaintiff, we notice a point which has been raised by the defendant, Gund, and his surety. It is contended in their behalf that, since the bid of the Holzer Company was received by Mr. Sporl, the architect, and the heating system installed directly by the Holzer Company and not under the supervision of the contractor, the latter is not responsible. We cannot see any force whatever in this contention. Gund made a contract with the plaintiff to erect his residence in accordance with certain plans and specifications; these plans and specifications provided for a heating system; Gund was paid for the installation of this system and is therefore responsible for the damages sustained under the building contract. The fact that he permitted the architect to deal directly with the sub-contractor is unavailing to him as a defense.
The same result obtains with respect to another defense interposed by Gund and his surety, which is that, since the specifications provide for the furnishing of a "Lo-Boy Quaker" oil furnace or equal and the evidence does not show that the furnace installed by the sub-contractor is the equivalent of a "Lo-Boy Quaker," there has been a material variance in the specifications and that they are thereby released. It seems to us that this argument overlooks the fact that, if such a material alteration has occurred, it is not for Gund or his surety to complain as the specification clearly imposes the obligation on the contractor to furnish the type of heater set forth therein.
We next examine the Holzer Company's claim that the damages awarded by the trial judge are excessive. This, of course, is purely a question of fact. Testifying on behalf of plaintiff were two heating contractors, Mr. Gayle Schneidau and Mr. Edward W. Carr. Mr. Schneidau stated that the heating system installed by *Page 686 
the Holzer Company was wholly inadequate to heat a house of the type owned by plaintiff. It was his opinion that the only way to remedy the situation would be to junk the system and install a new one. He estimated the cost of this new system to be $850.
Mr. Carr was not entirely in agreement with Mr. Schneidau. He stated that, when plaintiff first called upon him to examine the heating system, he was of the opinion that the furnace was too small and he estimated that the cost of the work in installing a new furnace and making certain changes in the system would amount to $861. Later, upon re-examination of the system, he found that he could get the guaranteed heat out of the furnace presently installed in plaintiff's residence by making certain enlargements in the ducts, the installation of grills in the attic and other areas of the house and other repairs. He estimated the cost of this work to be $666 and stated that he would guarantee that the inside temperature of the house would reach 70° when the outside temperature was 20° and that it would take no longer than an hour to produce the minimum heat. On cross-examination, it was called to his attention that the guarantee did not require a minimum heat of 70° inside when the outside temperature was 20° but only when it was 30°. And, when asked what would be the cost of the changes, which he proposed, to make the system comply with the guarantee, he said that the price would be reduced by $50, or the sum of $616.
To rebut the foregoing evidence, the Holzer Company produced its general superintendent, Mr. Walter J. Weitkam, and and Mr. Cary Gamble, a consulting engineer. Mr. Weitkam testified that the guarantee could be complied with by making repairs costing not more than $100. He further said that the Holzer Company had spent some $600 attempting to rectify the heating system so that it would provide the heat stipulated for in the guarantee. It seems obvious that the testimony of this witness was of little value to the trial judge in determining the extent of plaintiff's damage. The record shows that the Holzer Company had made numerous attempts to correct the defects, without avail. If it had already spent $600 in its efforts (and it was given many opportunities to make the heater function properly), it seems highly improbable that the system can be made efficient for the small sum of $100.
Mr. Gamble, as we have stated, is a consulting engineer and not a heating contractor. He is of the opinion that, with the use of rock wool to insulate the attic and other portions of the house, the heating system can be made to function in accordance with the guarantee. And he estimates the cost of the required insulation would be $156. We, however, find that his testimony is very vague as to the length of time it would take for the house to acquire a heat of 70° when the outside temperature is 30°.
It is obvious, from the award of $610 given by the district judge, that he thought that the testimony of Mr. Carr represented a fair appraisal of plaintiff's damage. We not only are unable to find manifest error in his ruling on this question of fact but think that his resolution is eminently correct.
Finally, we direct our attention to the reconventional demand of the defendant, Gund. He alleges that he has performed certain additional work, which was not contemplated by the original contract, amounting to $146.71. He testified accordingly. Plaintiff, however, says that any demand of Gund is more than offset by certain liquidated damages for delay in the work, which are due him under the building contract and that, before final payment was delivered to Gund it was agreed between his architect, Sporl, and Gund that, since the claim for demurrage exceeded Gund's claim for extras, both claims would be waived. Sporl testifies that this agreement was made with Gund. Gund denies it.
The district judge was evidently of the opinion that the testimony of Sporl, which is supported by the fact that Gund accepted final payment under the contract without making claim for extras, should prevail. We find no error in his conclusion. Furthermore, it seems clear, under the settled jurisprudence of this state, that Gund, having accepted final payment without protest and without making claim for extra work which was done during the course of construction, has estopped himself from now asserting that all of his claims were not fully liquidated. See Davis-Wood Lumber Co. v. Farnsworth Co., Inc. et al., La.App., 171 So. 622; Meyers v. Acme Homestead Ass'n, 18 La.App. 697, 138 So. 443; Berger v. Quintero, 170 La. 37, *Page 687 127 So. 356; Aronson v. Pailet, La. App., 173 So. 545 and Henry v. Swan, La.App., 200 So. 839.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.