Plaintiff, alleging that it had delivered to defendant on or about February 13, 1947 five of its Mall Gas Chain Saws for an agreed price of $2092.50, and that defendant *Page 513 
was entitled to two credits, one for $276.08, paid on March 10, 1947, and another on April 30, 1947, for "returned parts" amounting to $97.57, filed suit for an alleged balance due of $1727.85.
Attached to plaintiff's petition were a photostatic copy of the invoice listing the five chain saws and also twelve interrogatories on facts and articles addressed to the defendant.
Defendant in answer admitted the delivery by plaintiff in February, 1947 of the five chain saws, covered by plaintiff's invoice number 95675 as alleged, but set forth that the March 10th payment mentioned in plaintiff's petition in the sum of $267.08 constituted a payment in satisfaction of the balance due and in support of his contention attached to his answer an original check for this sum, payable to plaintiff, and on the face of which was contained the following writing in ink:
"Inv. 95675 2092.50 Parts returned for credit 1825.42 -------- 267.08"
and in print: This check is in full settlement of account as shown hereon. Acceptance by endorsement constitutes receipt in full."
The answer further set forth that defendant had been an equipment dealer for the plaintiff company for several years prior to the delivery of the merchandise sued on; that plaintiff, in the early part of 1947, through its agent, Frank I. Fisher, and with the cooperation of defendant, had transferred this dealership; that in the course of the discussion in which defendant and the prospective dealers participated, plaintiff's agent Fisher advised defendant that he might return certain parts which he had in stock and which would not be taken over by the new dealers, to plaintiff company for credit; that Fisher, plaintiff's agent, advised defendant to make a detailed list of the parts and forward same prepaid to plaintiff's factory in Chicago, and that pursuant to this authorization, and in accordance with the customary dealings with the plaintiff, he had forwarded to plaintiff at Chicago parts of a value of $1825.42, which with the $267.08 remitted in March, 1947, constituted a full settlement of the account sued upon.
After the answer was filed, the District Court overruled a motion by the plaintiff for judgment on the pleadings and likewise denied plaintiff's motion for a rehearing on this ruling. After trial, judgment was rendered in favor of plaintiff as prayed for. Defendant, after the denial of his motion for a rehearing, asked for and perfected the present appeal.
Defendant urges the contention set forth in his answer, namely, that plaintiff had authorized him as a dealer, and particularly in the Alexandria conference resulting in the transfer of the Mall gas saw dealership, to return for credit the parts which were not purchased by the incoming dealers. The defendant was a dealer for plaintiff's gasoline chain saw and for several years prior to February, 1947 had sold the equipment manufactured by plaintiff over a territory extending across North Louisiana and East Texas. Defendant maintained a sizable inventory (over $10,000 at time of giving up dealership) of spare parts and plaintiff had, on one or more occasions, issued defendant a credit memorandum for parts returned by him to its Chicago factory. The evidence further shows that at one time during his dealership, defendant had contacted plaintiff's Chicago office by telephone, requesting that plaintiff write a letter to a bank (from which defendant expected to borrow money based on his stock of parts, etc.), stating that defendant was entitled to return parts at will for credit. Defendant made this request — apparently from the bank — in a telephone conversation with Mr. Sanders, an authorized official of the plaintiff company in its Chicago office. Mr. Sanders told defendant that plaintiff would not permit such a practice and declined to write the requested letter. We therefore find that the record does not support defendant's contention that, as a Mall dealer, he had blanket authority to return parts to the Chicago plant for credit.
We next consider defendant's contention that plaintiff's agent Fisher, in a conference *Page 514 
at Alexandria with defendant and the incoming dealers, had authorized defendant to return all parts which he had in stock and which were not purchased by one of the incoming dealers. Mr. Fisher did tell defendant and the prospective dealers that parts might be returned to the Mall Company's Chicago office, provided same were sent prepaid and a detailed list furnished. Mr. Fisher admitted stating that parts could be returned under the conditions above named, but testified that he also told plaintiff and the prospective dealers that it was necessary to secure authorization in advance from the Chicago office. We conclude that, while Mr. Fisher was — salesman like — enthusiastic and overoptimistic as to the ease with which dealers might return parts for credit, the record does not establish that his statements amounted to an authorization to defendant to return such portions of his parts stock as were not taken over by the incoming dealers.
We next consider the merit of defendant's reliance upon the doctrine of accord and satisfaction and his contention that, under the circumstances shown by the record, plaintiff's acceptance and cashing of the $267.08 check, with notations as above set forth, constituted an estoppel against its pressing the claim sued upon.
The elements necessary for invocation of the doctrine are set forth in the opinion of Judge McCaleb — now Justice McCaleb — in the case of Davis-Wood Lumber Company, Inc. v. Farnsworth 
Co., Inc., et al, La. App., 171 So. 622, 627, in the following language: "It is apparent to us that there are present in this case the three concurring elements necessary for the invocation of the doctrine of accord and satisfaction. First, there was a disputed claim between the parties to the contracts; second, a tender was made in full settlement of the claim; and, third, the tender was accepted by the plaintiff. Under these circumstances, we are bound, under the jurisprudence of this state, to sustain the plea of estoppel."
In the case before us, there is little doubt but that the second and third of the above requirements were fulfilled, and the case turns principally upon whether or not there existed, at the time plaintiff cashed the check, a dispute between the parties.
The evidence shows that the two incoming dealers each purchased from the defendant parts worth about $4300, consequently, the $1825.42 worth of parts returned by defendant constituted approximately 20% of his stock and the return of a portion of the stock was not necessarily inconsistent with the statement by Mr. Sanders (the company's Chicago representative) in the telephone conversation with the defendant at his bank, that the company would not give blanket or unlimited authority for the return of his entire stock of spare parts.
The plaintiff company knew, at the time it received the check from defendant, that his dealership had been terminated, or was in the process of termination. Defendant attached to his answer and introduced in evidence the check payable to plaintiff and bearing on its face notations that should have put plaintiff on notice that defendant expected full credit for $1825.42 in spare parts and that the check was tendered conditionally, and, if accepted, would constitute a settlement of defendant's remaining liability under plaintiff's invoice number 95675.
The fact that plaintiff had accepted small sums of parts and given credit to defendant in prior years afforded some basis for defendant's contention that prior authorization from Chicago was not necessary for the return of parts for credit. The fact that defendant attached to his check a copy of the invoice for which the check was tendered in settlement and that defendant wrote on the face of that invoice the notation that the $267.08 constituted a settlement of the balance due after credit of the $1825.42 in parts returned, further served to put plaintiff on notice that the defendant expected this credit for returned parts, and to justify our conclusion that plaintiff, at the time the check was deposited for collection, knew that the defendant was making claim against the Mall Company for the $1825.42 credit in spare parts.
The check was dated March 6, 1947. The cancelling date, cut in the face of the *Page 515 
check, was March 13, 1947. On March 14th plaintiff wrote and mailed to defendant a letter as follows:
"Poulan Saw Company "201 East Avenue "Marshall, Texas
"Attention: Mr. Claude Poulan
"Dear Claude:
"We are in receipt of a list from you of chain saw parts that we assume you are returning to us for full credit. The total amount of the parts listed is $1,825.42.
"Frankly, Claude, we did not authorize you to return these parts for credit, therefore, we have instructed our Receiving Department to ship them back to you upon their arrival here at the factory. We believe that once before our Mr. Sanders informed you on the telephone that you cannot return perfectly good parts to us for credit. When you relinquished your saw business to your brother and brother-in-law it was our impression that they intended to purchase all of your assets. By the time all of these parts would be checked and inspected and replaced back in our stock departments, all of our profit on them would be gone.
"We are certain that you can see our reason in not wanting them returned to Chicago. If there are any further questions regarding the return of parts, please contact us by return mail.
"Yours very truly, "Mall Tool Company "/s/ H. B. Constant "H. B. Constant"
Plaintiff's statement in the first paragraph of the above quoted letter that "we assume that you are returning (the parts) to us for full credit," was mailed to defendant only one day after plaintiff's bank had effected collection of defendant's check containing the notation that the check was sent in settlement of its invoice number 95675 and containing a further memorandum that the check was in full settlement of the account shown and that acceptance by endorsement constituted a receipt in full. While we found that the evidence did not sustain defendant's contention that he was authorized by plaintiff's agents either in Chicago or by Mr. Fisher at the Alexandria conference to return parts in unlimited number for full credit, the statements of Fisher at Alexandria were such as to encourage defendant in the belief that his residue stock of parts might be accepted in Chicago. Likewise, the fact that defendant had been issued credit on one or more previous occasions for parts returned to Chicago — without prior authorization — laid some basis for defendant's considering the question an open one and a proper one for the making of the conditional tender.
These circumstances, and the other evidence in the record, indicate that plaintiff knew that defendant was making claim for full credit for the parts returned and that there was a "disputed claim between the parties" at the time the check was received and cashed.
The fact that defendant's check was for an amount admitted to be due does not prevent its acceptance — when tendered with the stipulation that the payment constituted a full settlement — from constituting an accord and satisfaction. Meyers v. Acme Homestead Ass'n, 18 La. App. 697, 138 So. 443, 445. In that case the homestead association sent a check to plaintiff for an amount admittedly due, upon which was endorsed "Full settlement of account." The Court, notwithstanding that the check did not include any amount in settlement of the portion of the claim in controversy, held that plaintiff, by accepting the check, was estopped from asserting a further claim, quoting from Corpus Juris, Volume 1, page 555, as illustrative of the preferred rule, the following. "'* * * Where an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole.'"
In the case of Berger v. Quintero, 170 La. 37, 127 So. 356, 357, the defendant had sent check to plaintiff for an amount admittedly due, along with a statement that it was sent in full settlement. Defendant later sued for the balance claimed and the Supreme Court in maintaining the plea of estoppel used the following language: *Page 516 
"The plea of estoppel, in our view, is well founded. The claim was a disputed one. If plaintiff was not satisfied with the settlement tendered, he should not have retained the check, and caused it to be certified by the bank upon which it was drawn, but should have returned it, in the absence of a waiver of the condition attached to the remittance. By retaining the check, and causing it to be certified, he is now precluded from rejecting it, and suing defendant upon the entire claim. Bassick Gold Mine Co. v. Beardsley, 49 Colo. 275, 112 P. 770, 33 L.R.A., N.S., 852; Seeds Grain Hay Co. v. Conger, 83 Ohio, St. 169, 93 N.E. 892, 32 L.R.A., N.S., 380; Scheffenacker v. Hoopes, 113 Md. 111, 77 A. 130, 29 L.R.A., N.S., 205; Drewry-Hughes Co. v. Davis, 151 N.C. 295, 66 S.E. 139; St. Regis Paper Co. v. Tonawanda Board Paper Co., 186 N.Y. 563,79 N.E. 1115."
Plaintiff's contention that the notation on the check that same constituted a full settlement and its receipt and endorsement constituted a receipt in full was printed instead of being in the handwriting of defendant or one of his employees, is similar to the contention which was unsuccessfully made in the Davis-Wood Lumber Company case, supra. In passing upon this point, the Orleans Court of Appeal used the following language: "Moreover, the point made that the notation on the check 'endorsed and accepted in full payment of within account' was printed instead of being in the handwriting of one of the defendant's officials is manifestly unsound, inasmuch as the notation is a part of the instrument and sets forth in unmistakable language the condition under which the payment was made."
The facts in the case before us are different from those in the Supreme Court case of Selber Bros., Inc. v. Newstadt's Shoe Stores et al.; 203 La. 316, 14 So.2d 10, 13, as the Supreme Court found as a fact that the part payments there made were not tendered upon a condition that the indebtedness would be fully satisfied if they were accepted.
In that case, as noted by the extract quoted below, the Court approved the above cited Meyers and Berger cases and indicated that its holding would have been different had the Newstadt's Shoe Stores check contained the declarations included in the case before us.
"But defendant urges, under the discussed special plea, that the acceptance of the minimum amounts resulted in what is termed an accord and satisfaction and that plaintiff is now estopped to collect the excess rental. In support of that position it cites and relies on Meyers v. Acme Homestead Association, 18 La. App. 697, 138 So. 443, and Berger v. Quintero, 170 La. 37, 38, 127 So. 356. In each of those cases, as we appreciate the facts thereof, there accompanied the delivered check a written declaration of the obligor that the payment constituted full settlement of the balance of the indebtedness, thus implying that its acceptance would entirely discharge the obligation; and the court held that by accepting the check the creditor was estopped to recover more.
"In the controversy now before us, it does not appear that the payments were tendered upon a condition, expressed or implied, that the indebtedness would be fully satisfied if they were accepted. There was nothing in writing, either on the checks or otherwise, to indicate the existence of a condition of that kind; neither does the evidence show that the parties understood or intended that the discharge of all liabilities would result from the acceptance."
Plaintiff has cited the case of Coco v. Moss Company, 4 La. App. 645. In that case, the Court of Appeal of the First Circuit denied a plea of estoppel. In that case it appears that defendant sent a check to plaintiff for a portion of the account accompanied by a statement that the check was remitted to cover the balance due. The opinion does not indicate whether or not the check or statement contained the further stipulation — as is true in the present case and in the above cited Louisiana cases — that acceptance of the check constituted a receipt in full or a settlement of the account, and may be distinguishable on this point from the case before us and from the Louisiana cases above cited. As stated by Justice Hamiter in the Selber Bros. case, supra, quoting from [American Forwarding Mercantile Co. v. Lindsay *Page 517 
Chair Co.,], 129 Ill. App. 548: "'It is one thing to inform a creditor when sending a check that the debtor will not pay any more and a very different thing to advise him that the check is sent upon condition that if he accepts it, he will do so in full settlement of the account.'"
Having found the three concurring elements set forth in the Davis-Wood Lumber Company opinion, supra, as necessary for the invocation of the doctrine of accord and satisfaction, we conclude that the District Court erred in not maintaining the plea of estoppel.
The judgment appealed from is reversed and judgment is now rendered dismissing plaintiff's suit, with costs.