56 So.2d 236

**HENRIQUES v. VACCARO.**
**No. 40098.**

Nov. 5, 1951.

Rehearing Denied Dec. 10, 1951.

Fred S. Weis, New Orleans, for plaintiff-appellant.

Dart, Guidry & Price and Edward F. Wegmann, all of New Orleans, for defendant-appellee.

MOISE, Justice.

Plaintiff, an attorney-at-law, is appealing from an adverse judgment in the district court, holding that he was estopped from prosecuting his claim for the balance allegedly due under a contingent fee contract with Lucas J. Vaccaro, by virtue of having previously had certified a check tendered by Vaccaro in full settlement of said fee.

The record discloses the following facts:

On October 8, 1946, Henriques agreed to represent Lucas J. Vaccaro in the latter's controversy with other stockholders of Tropical Ice Company, Inc., in which defendant was attempting (1) to prevent an amendment of the corporate charter which would have thereby conferred upon it the powers of a holding corporation with the right to deal in investments or speculations and (2) to force the corporation into liquidation with the ultimate purpose of effecting purchase of his stockholding at its "fair

and equitable value". The fee contract consists of a letter of employment, addressed by defendant Vaccaro jointly to appellant and John J. Finnorn, another attorney. (Mr. Finnorn is not a party to these proceedings.) The following provisions of the fee contract are pertinent:

"If you will accept this employment, I agree to pay you fees graduated as follows:

"I can now sell this Corporation my stock for about $250.00 per share, but I figure its true value is in excess thereof. So on any amount for which I sell my stock in excess of $250.00 per share, or for which I might sell any asset received in liquidation, which figures in excess of $250.00 per share, and up to $500.00 per share, I will pay you a fee of 10 percent (10%); similarly on any sum in excess of $500.00 per share and up to $750.00 per share, I will pay you a fee of 12 1/2% and on any sum realized above $750.00 per share, I will pay you a fee of fifteen percent (15%); all of this, of course, to be contingent upon success in helping me obtain either in cash or assets an excess value over $250.00 per share.

"All necessary costs, including court costs, and other expenses authorized by me to be in addition to the graduated fees mentioned above.

"I couple your employment in this matter with an interest in the stock, and agree not to make any settlement of this matter in whole or in part, or to sell this stock or any part thereof without your knowledge and full co-operation and consent."

As a result of mutual efforts on the part of attorneys and client, defendant was successful in achieving both of the objectives stated supra. The liquidation of the corporation was effected; and on January 7, 1947, Vaccaro received his share of the distribution in kind made of its assets— $29,829.95 cash and 703 shares of the capital stock of Banco Atlantido of LaCeiba, Honduras (there was reserved for contingencies $3,815.45.)

On January 8, 1947, Vaccaro wrote Henriques, enclosing check in the amount of $1,-309.42, representing the latter's 45% share of the fee (Finnorn's share was 55%); in said letter the fee calculation was explained thus:

"* * * I have this date received settlement from the Tropical Ice Company and am outlining below for your information the basis of settlement from the Tropical Ice Company and likewise the basis of our agreement.

"278 1/2 shares of Tropical Ice Co. stock basic value $250.00 per share—$69,625.00.

"I received from the Tropical Ice Company in liquidation $29,829.25 cash together with 703 shares of the stock of Banco Atlantido. The best quoted offer to buy was on a basis of $98.00 per share which indicates a value of $68,894.00 for the 703 shares. Therefore, the total value received in exchange for 278 1/2 shares of the Tropical Ice Company stock was $98,723.25.

Therefore, the excess value over the price of $250.00 per share is $29,098.25.

"Since the contract called for 10% of the excess over $250.00 per share, the total fee amounts of $2,909.82. Consequently, I am enclosing in full settlement of the contract my check in the amount of $1,309.42, which I understand is the 45% division for your proportion under the contract."

This letter did not reach Henriques until nearly a week later, and he promptly rejected both the computation of the fee and the offer of the check in full settlement thereof:

"*    *    *    *    *    *

"I am aware of the status of the liquidation settlement of the Tropical Ice Co., Inc. in Liquidation, but must advise that your calculation of the fee due me under our contract of October 8th, 1946 is based on the *erroneous assumption that the value* of the stock received in partial liquidation *can be arbitrarily estimated.* This should be clear to you if you will examine the contract itself.

"The 703 shares of the stock of the Banco Atlantido which you received as partial settlement of your interest, are worth considerably more than the $98.00 per share; in fact your own Accountant placed a value largely in excess thereof, not including real estate, or banking facilities shown on the Bank's statement at *only $2.00.*

"*  *  * Mr. D'Antoni [Carmello D'Antoni, president of Tropical Ice Co., Inc.]

was unable to give us the exact value of the real estate holdings of the Banco Atlantido, but he did say that the Banking House in LaCeiba alone would cost at least $100,000.00 to replace. He referred us to C. G. Robinson & Co., their Accountants, for further details, which details will be secured at as early a time as is practicable *  *  *.

*    *    *    *    *    *

"Your contract with me couples my employment with an interest in the stock you received, and obligates you not to sell same, or any part thereof, without my knowledge and full co-operation and consent. I assume you have not sold your Banco Atlantido stock without my knowledge, co-operation and consent. Just making an estimate of $98.00 per share as the value of your stock, *without complete investigation as to its real value,* cannot and does not fix the value on which my fee is to be based, *nor does it bind me to accept such an unreasonable and arbitrarily fixed valuation as a basis for fixing my fee.*

*    *    *    *    *    *

"I have had the check you sent me certified, *and will apply the amount of same as a credit on my correct fee when it is later fixed and paid by you."* (Italics mine.)

Subsequently, Vaccaro, while maintaining his position that the stock was worth but $98.00 per share, granted Henriques authorization (at the latter's written re-

quest) on January 27, 1947, to sell it during a 48-hour period at $200.00 or upwards; this authorization further stated:

"It appears to me that you may be seeking to establish a criterion of value and therefore might propose the sale of less than the *703* shares of Banco Atlantido stock *which I hold,* consequently, it is to be understood that your participation in the excess selling price over $98.00 per share will be limited to the number of shares that you are able to sell at $200.00 and upwards per share." (Italics mine.)

Despite Vaccaro's reiteration that this stock was worth $98.00 per share, and notwithstanding his assertion to Henriques in the foregoing letter that he held *703* shares, the record discloses that in truth and in fact, on January 6, 1947, he had sold 100 shares at $125.00 to D'Antoni & Company, a firm of stockbrokers. It is noted that that sale was consummated prior to Vaccaro's tender of the check to Henriques, on the basis of an alleged valuation of $98.00 per share.

It is the contention of Henriques that the stock was actually worth at least $320.00 per share, and that his portion of the fee accordingly should have been $10,402.45; the instant suit seeks recovery of that amount, subject to a credit of $1,309.42, or $9,093.03. Vaccaro testified on the trial of this case that he has since sold all his holdings, and the record discloses the following sale prices:

| | | |
|---|---|---|
| March 3, 1948 | 300 shares @ $200.00 |
| March 22, 1948 | 100 shares @ $220.00 |
| May 21, 1948 | 100 shares @ $200.00 |
| Oct. 20, 1948 | 50 shares @ $220.00 |
| Jan. 11, 1949 | 53 shares @ $235.00 |

■ Applying the rule of Davis-Wood Lumber Co. v. Farnsworth & Co., La.App., 171 So. 622, 627, the trial judge found that the three elements necessary to constitute an accord and satisfaction had concurred: the presence of an unliquidated or disputed claim; a tender by the debtor of a certain amount as settlement thereof; and an acceptance, that took place when Henriques caused Vaccaro's check tendered "in full settlement of the contract" to be certified. He further held that Henriques had not been misled by Vaccaro's misrepresentations as to the value of the stock but had been well aware throughout his dealings with the latter that the stock was worth far more than $98.00 per share.

■■ The jurisprudence is well-settled that where one retains a check offered in accord and satisfaction of a larger amount claimed to be due, and has it certified (which discharges the drawer from further liability thereon and removes it from his control), the payee is precluded from subsequently suing upon the entire claim. Berger v. Quintero, 170 La. 37, 127 So. 356. The ruling in the Davis-Wood case, supra, loc. cit., is applicable here: "The effect of the acceptance of the check in the instant case could only be set aside because of error or fraud, and a careful review of the

evidence has convinced us that the plaintiff received the payment with its eyes open and it cannot now be heard to say that its action in so doing did not have the legal effect of settling for all times the dispute between the parties."

Appellant argues, however, that if accord and satisfaction did exist, defendant had waived the same by subsequent negotiations with appellant, concerning the possibility of a sale of the stock at more than $98.00 per share, and that any estoppel was thereby avoided. This contention is not borne out by the facts of record. Following receipt of Henriques' letter of January 16, 1947, protesting the computation of his fee, Vaccaro, by letter of January 22, 1947, reiterated his position that it was a correct computation and in unequivocal terms rejected Henriques' claim:

"I disagree with your construction as to the effect to flow from your having had my check certified. Such certification was tantamount to having the check cashed since the funds upon which they were drawn were immediately charged with the amount of the check.

"From the facts related, it is clear that I deny any liability other than that for a fee participation in any part of the funds reserved for contingencies that may later be distributed by the liquidators."

The authority to sell the stock, which was granted to Henriques for a 48-hour period by Vaccaro's letter of January 27,

was conferred only in response to the former's letter of request, dated January 24, 1947; in an obvious intent to divorce the later authorization from the fee transaction, Vaccaro incorporated the letter of request in said authorization, restricting his acceptance to the new offer.

While we regret the inequities which sometimes result from an impartial application of the law, nevertheless, we cannot overrule established principles in a case which falls squarely within their scope. Dura lex, sed lex.

For the reasons assigned, the judgment appealed from is affirmed.

HAWTHORNE, J., absent.