McCALEB, Justice.
This is a suit by Jefferson and Plaque-mines Drainage District to recover $251,-775.81 from the City of New Orleans and the Sewerage & Water Board of New Orleans, allegedly the balance due for a nine-year period (1947-1955) under a contract between plaintiff and defendants dated January 2, 1918, by which, according to plaintiff’s averments, the City became legally obligated to pay approximately thirty percent of the operational costs of the entire District in consideration of the benefits derived by it from the drainage of 11,150 acres of land situated in the Fifth Municipal District, known as Algiers.
Various exceptions and pleas were filed in limine by defendants to the petitions.[1] These pleadings, which included an exception of estoppel and certain pleas of prescription were overruled and thereafter separate answers were filed by defendants in which they denied any legal liability to plaintiff under the contract. The exception of estoppel was specially renewed in their answers, defendants pleading that the City of New Orleans, having appropriated and paid the sum of $20,000 per annum from 1947 through 1955 for the drainage services furnished by plaintiff, had fully discharged and settled whatever liability it might have owed under the contract for the years involved in the suit.
Following a trial on the issues presented, there was judgment for the defendants, dismissing the suit. In his written reasons, the judge discussed and disposed of all contentions and defenses, concluding that the payment by the City to the plaintiff of $20,000 a year constituted “ * * * full and complete satisfaction for the years 1947 through 1955 and is binding on all parties.” Thus, the judge, in effect, sustained defendants’ plea of estoppel and his action in this respect is the basis for his dismissal of the suit. But, having passed on all rights and liabilities of the parties under the contract sued on, the judge reserved to plaintiff the right to recover in other proceedings from the defendant, the City of New Orleans, the pro-rata cost of the operation of its pumping plant for the years 1956-1957 and subsequent years.
Plaintiff has appealed from the adverse judgment and defendants have answered the appeal, claiming that the judge should have specifically sustained their plea of estoppel and dismissed the suit without reservation by reason of the validity of the various exceptions interposed by them.
Plaintiff and defendants have re-asserted, in oral argument and brief here, all of the contentions presented to the trial court. However, we direct our immediate attention to defendants’ plea of estoppel, which we think is determinative of the case.
The Drainag'e District was created in 1912 by the Police Juries of Jefferson and Plaquemines Parishes under authority of Act 317 of 1910 for the purposes of draining and reclaiming certain portions of land situated on the West bank of the Mississippi River in Jefferson and Plaquemines Parishes. It was contemplated at that time that the district would also drain and benefit approximately 11,500 acres of land located in Orleans Parish, forming the lower portion of Algiers,[2] although none of this acreage could be legally included within the Drainage District, the City of New Orleans being specially excepted from the provisions of Article 281 of the Constitution of 1898, under which drainage and sewerage *665 districts were granted authority to levy and assess special acreage taxes for drainage against the property within their area. Nevertheless, those interested in the formation of plaintiff Drainage District sought a voluntary contribution from the City for the benefit that would accrue to its land by the operation of the contemplated pumping plant and, during 1912, the Sewerage & Water Board appointed a committee to investigate the situation. This Committee, after examination of the proposal, made a formal report to the Mayor and Commission Council of the City of New Orleans on October 10, 1912, in which it was recommended that the City contribute annually ll,150/37,645[3] of the operating costs of the plant or a sum estimated to be $8,750 per annum “provided, of course, that the City can see its way to make the necessary annual appropriations out of its budget”. No immediate formal action was taken by the City as to this proposal but it nonetheless made voluntary contributions annually to the Drainage District until the year 1917 when, by Ordinance No. 4575, the Commission Council authorized Martin Behrman, Mayor of the City, to enter into a contract with plaintiff carrying into effect the recommendations of the Sewerage & Water Board’s Executive Committee dated October 10, 1912. It was further provided in this Ordinance that the Sewerage & Water Board was to perform certain work in the drainage district and, in consideration of this, the latter was to dredge and improve canals in Orleans Parish.[4] The ordinance appropriated $20,000 to the Sewerage & Water Board for the performance of this work in the District.
In accordance with the ordinance, the agreement invoked in this suit was con-fected by Notarial Act of June 2, 1918 between the Drainage District and the City and the Drainage District and the Sewerage & Water Board. The contract, as indicated, consists of two separate parts. In the first portion thereof Martin Behr-man, appearing as Mayor of the City and ex officio President of the Sewerage & Water Board, and George A. Hero, President of the Drainage District, agreed that plaintiff would dig various canals and widen others in Orleans Parish and the Sewerage & Water Board would execute certain work within the Drainage District, or as much thereof as it was able to do, within the limit of the fund appropriated by the City ordinance, it being provided that the work to be performed by the contracting parties would he as nearly equal as possible. This part of the contract has long since been executed to the satisfaction of the parties.
The second part of the agreement provides :
“And here the said Martin Behr-man, in his capacity as Mayor of the City of New Orleans, declared that:— in consideration of the foregoing and the faithful execution of all and singular the stipulations and obligations assumed herein by the Jefferson Plaque-mines Drainage District, he does bind the City of New Orleans to carry into effect the recommendation of the Executive Committee of the Sewerage and Water Board of the City of New Orleans of October 10, 1912 * * ”.
The recommendations, as above pointed out, included therein favorable consideration of the proposition that the Sewerage and Water Board provide for the proportionate costs “ * * * of operating the plant * * * ” of the district in relation to the acreage of the City benefited thereby, approximately 30%, or the estimated sum of $8,750 per year. Conform-ably with this agreement, the City there *666 after annually appropriated $8,750 until 1928, when the payment was increased to $14,000; $16,000 was appropriated in 1929 and 1930 and $14,000 from 1931 through 1937. Beginning in 1938 the City budgeted $20,000 as its contribution to the Drainage District and like payments were made until 1947, when they were discontinued entirely following a dispute between the parties as to the City’s legal liability under the contract.
On November 18, 1947, the Drainage District brought a mandamus proceeding against the City and the Sewerage & Water Board in the Civil District Court in which it prayed for an order against the City commanding it to budget, appropriate and pay its pro rata of the costs and expenses of operation of the Drainage District for the year 1947, “ * * * in the sum of not less than Twenty Thousand * * * Dollars, or such sum as may be found to be necessary, after trial of this case, and to budget and appropriate and to pay yearly for subsequent years, under said contract, its pro rata of the cost or expense of operation * * * ” of the District such amounts as may be found due “ * * * but not less than the sum of Twenty Thousand * * * Dollars per annum, ‡ * * "
The defendants interposed exceptions to this suit which were argued, submitted and taken under advisement by the judge but no decision was ever reached. Meanwhile, numerous discussions were had between officials of the City and representatives of the Drainage District with a view to settlement of their differences. An investigation of the Drainage District was also conducted by the Public Utilities Commissioner of the City and he recommended that payment of $20,000 yearly to the District be resumed. In 1948, as a result of these discussions and investigations, the City reestablished the annual $20,000 payments including the year 1947, which payments were continued each year through 1955.
On July 12, 1956, plaintiff voluntarily discontinued its mandamus action, without prejudice, and simultaneously this suit was filed, the claim, as aforesaid, being for an alleged balance due over and above the yearly $20,000 payments made by the City and accepted by plaintiff and the stipulated percentage of the costs of plaintiff’s entire drainage operations.
It seems plain from the above stated facts that the plea of estoppel is well founded and we think the trial judge correctly concluded that the annual payment of $20,000 by the City constituted full and complete satisfaction of its legal obligation, if any existed, under the contract for the years in suit. Indeed, the prayer of plaintiff’s petition in the mandamus suit being for the appropriation and budgeting by the City of a sum of not less than $20,-000 for the year 1947 and thereafter, it would seem that the appropriation of that sum each year by the City and its payment to plaintiff constituted a compliance with plaintiff’s demand which was as legally effective as if the funds had been deposited by the City into the Registry of the Court and withdrawn each year by plaintiff.
But counsel for plaintiff argue that these payments may not be considered as a settlement in full of plaintiff’s contractual rights, which it was seeking to enforce in the mandamus suit, because Article 3071 of the Civil Code requires that compromises be in writing and, furthermore, since the monthly vouchers presented to the City by plaintiff contained the notation "Without prejudice to the rights of either the City of New Orleans or the Board of Commissioners of the Jefferson and Plaque-mines Drainage District in suit now pending in Civil District Court”, the payments received by plaintiff must be regarded as payments on account and not as full acquittance of any contractual obligation imposed on the City by the 1918 agreement.
These contentions are not well founded. Initially, counsel misunderstand the basis of the plea of estoppel; the City is not contending in this plea that plaintiff’s acceptance of the payments effected a com *667 promise of the then pending mandamus action. It declares that the payments made by it constituted a complete accord ■ and satisfaction of the annual contribution asserted by plaintiff under the 1918 agreement for the years to which those payments were attributable.
Ever since the decision of this Court in Berger v. Quintero, 170 La. 37, 127 So. 356, the common-law doctrine of accord and satisfaction has been consistently recognized and applied in this State. In that matter defendant, an attorney-at-law, who had received from a Notary Public the share due his client in the partition of a succession, deposited the money in his personal bank account and thereupon remitted to his client a check for less than the sum received, having deducted therefrom the amount of his attorney fee. The client protested the fee deduction and brought suit for the full amount. Estoppel was pleaded, based on the ground that plaintiff had accepted the amount tendered by the attorney in that he had the check certified. The plea was sustained, the Court stating that, by retaining the check and causing it to be certified, plaintiff was precluded from rejecting it and suing defendant upon the entire claim. See also Meyers v. Acme Homestead Ass’n, 18 La.App. 697, 138 So. 443; Davis-Wood Lumber Co. v. Farnsworth & Co., La.App., 171 So. 622; Succession of Burns, 199 La. 1081, 7 So. 2d 359 and Henriques v. Vaccaro, 220 La. 216, 56 So.2d 236.
The fact that the plaintiff inserted on the monthly invoices presented for payment to the Department of Public Finance of the City that they were without prejudice to the rights of either party in the mandamus suit, did not produce any legal change in the situation. There is not the slightest doubt that the checks issued by the City, which' were received and cashed without protest on the part of plaintiff, were intended by it as payments in full for the months and years for which they were designated.[5] In this connection, the trial judge rightly observed in his opinion that “Since the Drainage District demanded the City budget $20,000, the agreement to accept $20,000 per year, without prejudice to this suit, could only reasonably mean that when the Drainage District accepted the annual payment of $20,000 it would be in satisfaction of that year, without prejudice to the future, otherwise the Drainage District, if it lost the suit, might have to make a refund.”
The plea of estoppel, being well founded, compels the dismissal of the demand in its entirety as plaintiff seeks only an enforcement of its alleged contractual rights for years during which the City’s obligation has been fully acquitted.' This being so, it is unnecessary to pass on other questions raised by the City and the Water Board respecting the invalidity of the 1918 contract, or whether the Water Board is responsible thereunder or whether, if there is liability, it is limited to the contractual pro rata of the operating costs of the pumping station or whether (as contended by plaintiff) liability extends to the operating costs of the entire District.
The district judge decided all these questions and in his decree specially reserved to plaintiff the right to recover from the City of New Orleans in appropriate proceedings the pro-rata operation costs of its pumping plant for the years 1956-1957 and subsequent years, as such costs have accrued or may accrue. Since we express no opinion as to the rights and liabilities of the parties under the contract, but only that there has been accord and satisfaction for the years involved in this *668 suit, the judgment of the district court will have to he amended by deleting therefrom the special reservation therein contained. No reservation whatever is necessary as the law accords all parties at interest the privilege of bringing suit for the assertion or protection of their rights in the premises.
Accordingly, the judgment appealed from is amended by striking therefrom the special reservation granted plaintiff of the right to recover from the City of New Orleans certain operational costs in appropriate proceedings and, as thus amended, it is affirmed.

. In the original petition plaintiff claimed a balance due under the contract of $179,122.15, which it increased to $251,-775.81 by supplemental and amended pleadings.

. This land enjoyed a natural servitude of drainage over the lands below located in Jefferson and Plaquemines Parish. Civil Code, Art. 660. Petite Anse Coteau Drainage Dist. v. Youngsville Drainage Dist., 146 La. 161, 83 So. 445.

. The total acreage to be benefited by the drainage system.

. This exchange of services between the Drainage District and the Sewerage & Water Board was provided for because the equipment of the Board was better fitted for the work that was required in the drainage district while the dredging and improvement of canals could best be performed by plaintiff.

. Actually, Mr. Hero (President of the Drainage District) made several com- • plaints to the Mayor of the City and Mr. Baldwin Wood of the Sewerage & Water Board, contending that plaintiff should receive a larger contribution. But, if he was not satisfied, he should have rejected the checks and litigated the mandamus suit. Plaintiff could not accept and use the City’s money and later insist that it was received as payments on account.