129 So.2d 84 (1961)
James W. JONES, Jr., Plaintiff-Appellee,
v.
STANDARD LIFE & ACCIDENT INSURANCE COMPANY, Defendant-Appellant.
No. 225.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1961.
Rehearing Denied May 9, 1961.
Certiorari Denied June 20, 1961.
*85 Marvin F. Gahagan, Gahagan & Gahagan, Attorneys, Natchitoches, for defendant-appellant.
James W. Jones, Jr., plaintiff-appellee, in pro. per.
Before TATE, FRUGÉ, and CULPEPPER, JJ.
FRUGÉ, Judge.
This suit comes before us on appeal by defendant. Plaintiff, the insured of defendant, filed suit to recover benefits under a hospital expense policy, issued by defendant, together with an equal amount thereof and attorney's fees as penalties per LSA-R.S. 22:657. The trial court maintained an exception of no cause or right of action predicated on limitations in the policy sued on and dismissed plaintiff's suit. Plaintiff appealed the dismissal. The Court of Appeal, Second Circuit, reversed the lower court and remanded the cause "for further proceedings in accordance with law and consistent with the views" therein expressed. See Jones v. Standard Life & Accident Insurance Company, 115 So.2d 630, 633. The case went on for trial accordingly, judgment was rendered in favor of plaintiff in part and defendant has prosecuted this appeal. Plaintiff has answered this appeal asking that certain of his demands be recognized and that there be judgment in accordance with his original and supplemental demands.
Defendant issued its "Preferred Hospital Expense Policy" to plaintiff. It provided *86 for an $8 per day maximum for hospital room. It also provided for certain "Hospital Expense Benefits" as follows:
"If any member of the Family Group shall be necessarily confined within a recognized Hospital as a resident patient on account of such injury or such sickness and therein treated by a licensed physician or surgeon other than a member of the Family Group, the Company will pay to the Insured for the expenses actually incurred for:

"Hospital Room, including meals and general nursing care, but not to exceed the Daily Hospital Indemnity [$8.00] set forth in the Schedule for each day any member of the Family Group shall be confined therein, but not to exceed Three Hundred and Sixty-Five Days as the result of any one accident or sickness; provided, however, that after this policy has been maintained in continuous effect, without lapse, for a period of Five Years, and thereafter any member of the Family Group shall be necessarily confined within a Hospital as provided herein, then such hospital room expense will be paid so long as the member of the Family Group shall be confined therein.

"The Company will also pay the expense actually incurred by the Insured during the period of such hospital confinement for Operating Room, Anaesthetic, X-ray photographs, Hypodermics, Surgical Dressings, Laboratory Service, Medicines (including pencillin, streptomycin, and other antibiotics), Oxygen, Iron Lung and Blood Transfusions, not to exceed six times the Daily Hospital Indemnity if any member of the Family Group shall be confined to the hospital for five days or less and if so confined for more than five days, an amount equal to the Daily Hospital Indemnity for each day so confined, but not to exceed Fifty times the Daily Hospital Indemnity." (Emphasis added.)
In September of 1957 plaintiff became ill and was hospitalized in the Natchitoches Hospital from September 13-15 inclusive and September 21-27, 1957 with pneumonia, "and other illness" allegedly at a total cost of $397.70 (inclusive of doctor's bill, medications, and the hospital expenses). Plaintiff forwarded a statement of these expenses to defendant in the latter part of September, 1957. Defendant thereupon remitted its check in the amount of $96 payable to plaintiff. Plaintiff negotiated the check and wrote defendant stating that he had received the check in the amount of $96 and that a balance of $301.70 was due and owing under the policy, and requested that defendant remit another check to cover the balance due. In that letter it was further stated that defendant had made "no explanation" of its consideration of the matter and that plaintiff expected "payment in compliance with the stipulations of the policy issued" to him. The defendant did not comply with the above request. On February 2 or 3, 1958, plaintiff was again hospitalized, in the Saint Francis Hospital in Monroe, where his illness diagnosed as "acute diverticulitis". Plaintiff wrote defendant on March 10, 1958, informing defendant of the second hospitalization and the cost thereof. He further stated that he trusted that defendant would further consider the expenses of the first hospitalization in the Natchitoches Hospital incurred in September as he could not "afford to accept the $96.00 paid, as settlement of that claim. And, as stated to your representative while in my office, hope you people will not force me to go into the Court, in an effort to collect under this policy." Defendant paid no more on either of the claims, and this suit followed
In plaintiff's original petition his cause of action was based on the first hospitalization and confinement of September, 1957. As above mentioned defendant filed an exception of no cause and no right of action to the original petition on the theory that under the policy (the pertinent parts of *87 which are quoted above) plaintiff was only entitled to $96 for the first confinement and that the petition alleged that he had received that amount. The trial court sustained the exception, but the Court of Appeal, Second Circuit, overruled and remanded the case. In finding that the petition stated a cause of action the Second Circuit, Judge Ayres as the organ thereof, stated that:
"Even under a construction of the aforesaid provisions most favorable to defendant, the insured's recovery of hospital expense in addition to the room rent would only be limited to $400, that is, an amount equal to 50 times the daily room rent of $8. But, under the injunction that vague, uncertain, doubtful, and ambiguous language in insurance policies must be construed most favorably to the insured and against the insurer, we are constrained to hold that such limitation in inapplicable and that the policy, as regards hospital expense, specifies no limitation as to amount. From this conclusion, it follows that plaintiff's petition discloses a cause of action. * * *" Emphasis added. Citation above, Jones v. Standard Life and Accident Insurance Co., 115 So.2d at page 633.
Prior to trial on the merits, after the case was remanded, plaintiff amended and supplemented his original petition and set forth the second confinement and treatment in the Saint Francis Hospital in Monroe.
The defense contends that the clear language of the policy provided that the benefits were limited to $96 and alternatively that an "accord and satisfaction" was effected when plaintiff cashed the check. As to the amended and supplemental petition defendant maintains that the policy had lapsed on November 2, 1957 by virtue of plaintiff's failure to pay premiums and therefore liability under the policy had terminated.
In view of the holding of the Second Circuit in this case, cited and quoted above, pertaining to the exception of no cause of action the contention of defendant, that under the policy it had met its obligation, has no merit. Therefore, the first issue to be decided is whether or not there was an accord and satisfaction.
The trial court found that there was no accord and satisfaction. In his written reasons for judgment he stated:
"Defendant argues that acceptance of the check for $96.00 estops and precludes plaintiff from claiming more. I have little doubt that such would be the case, had defendant seen fit to file the voucher in evidence. So far this court has seen nothing that plaintiff signed acknowledging payment in full. If defendant has such a document or endorsement, they have not seen fit to present it or for that matter to account for its absence. * * *"
On the 21st of November, 1960 defendant applied for a new trial or re-hearing, but nevertheless judgment was rendered on December 1, 1960. On December 5, 1960 defendant applied for a rehearing or new trial alleging that it had found the original check and offered it as a part of the application for re-hearing or new trial and further alleged that the "decree states that the plaintiff would be estopped if there was proof of his signing the original check admitting payment of his claims * * *". Neither a new trial nor a re-hearing was granted.
We agree with the result reached by our learned brother below in relation to the accord and satisfaction. There is nothing on the check offered by defendant that states or implies that the $96 was "payment in full" or "in payment of all claims" nor any words that would lead to that conclusion, nor is there evidence of enclosures that would have apprised plaintiff that the check was sent as full payment. Defendant has cited and relied on several cases in support *88 of its theory that there was an accord and satisfaction. However, each of the cited cases is distinguishable in that the checks in those cases were remitted with the declared intention of being full payment, whereas in the case at bar such an intention has not been shown. In Sentell v. Wilcox, 3 Orleans App. 503, the checks were sent "in settlement" and the enclosed correspondence contained the same statement. There the court held that:
"* * * where there has been a dispute between the parties as to the exact amount due and an amount first tendered, is returned, and a second amount is sent in settlement of the controversy, the offer of such second amount is to be viewed in the nature of a compromise."
The Court continued, quoting from 1 Cyc. of Law and Procedure, at page 333.
"Where, however, a sum of money is tendered in satisfaction of the claim, and tender is accompanied with such acts and declarations as amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that if he takes it he takes it subject to such condition, an acceptance of the money offered constitutes an accord and satisfaction."
The Court then concluded that "in this case the giving of the checks was made on condition that they would be received in settlement and not in part payment of the disputed account; with full knowledge of that condition." (Emphasis supplied.) In Berger v. Quintero, 170 La. 37, 127 So. 356, the check in question was mailed with a statement that the check was for the balance due, and the check was retained for three years, certified and keptthe balance being the cause of the controversy in the ensuing suit. The plaintiff was held to be estopped to reject the check and sue on the entire amount. In Meyers v. Acme Homestead Ass'n, 18 La.App. 697, 138 So. 443, 445, each of the checks in question bore on the reverse side thereof the legend "Full settlement of account detailed below BK 3649." There the Court stated that:
"* * * the law appears to be well settled that one, to whom a check is tendered containing such a stipulation, must either accept or reject the stipulation, as written, and may not obtain the benefit of the check and, at the same time, avoid the obligation resulting from the stipulation by adding other stipulations intended to nullify the first. * * *" (See cases cited therein at page 445 of 138 So.)
Where a voucher contained a "balance" less certain amounts leaving a "credit" and in the space for endorsements on the voucher the legend "endorsed and accepted in full payment of within account" was written, and the check was deposited to the account it was held that this was an accord and satisfaction. See Davis-Wood Lumber Co. v. Farnsworth & Co., La.App., 171 So. 622. In Henriques v. Vaccaro, 220 La. 216, 56 So.2d 236, 238, enclosed with the check sent as payment was a statement that "I am enclosing in full settlement of the contract my check * * *". It was held that by having the check certified the plaintiff was estopped from prosecuting his claim for the balance.
The rule to be applied in determining whether or not there has been an accord and satisfaction was succinctly stated in Davis-Wood Lumber Co. v. Farnsworth & Co., supra, to the effect that: a disputed claim must exist between the creditor and debtor; a tender must have been made in full settlement of the claim; and the tender of the settlement as full payment must have been accepted by the creditor. In the case at bar there is no evidence or writing that the check was given as full payment of the alleged claim. To allow the negotiation of a check, completely *89 devoid of any indication that it represents full payment and in an absence of such an intent being manifested by other writings would be to allow subtleties too fine and intricate to be readily cognizable. Whereas the law is plain that the tender must have been made in full settlement of the claim and that such tender must have been accepted by the creditor. Hence, where checks bear no indication that they are payment in full, and there is no mutual understanding that if the checks are accepted the claim will be deemed to have been paid in full it has been held that an accord and satisfaction did not result and that the creditor was not estopped from claiming the balance. See Selber Bros. v. Newstadt's Shoe Stores, 203 La. 316, 14 So.2d 10. In other cases, not cited by defense, a similar distinction was noted. Therefore, we find, as did the trial judge, that there has been no accord and satisfaction under these facts and circumstances.
We next address our attention to the task of determining defendant's liability under the contract of insurance.
The trial judge found defendant liable for the hospitalization in September, 1957 in the amount of $368.31 less a credit for the $96 previously paid. However, he denied recovery for the period of confinement in February, 1958, in the Saint Francis Hospital in Monroe. We can find no error as to recovery allowed for the September, 1957 hospitalization. The bills presented were proven to have been properly covered by the policy. Moreover, the defendant does not suggest that they are wrong or inaccurate, but merely denied liability therefor beyond the $96 previously paid. We can find no error in the judgment regarding the hospitalization in the Natchitoches Hospital.
The trial court denied recovery for the confinement in the Saint Francis Hospital on the theory that the demand therefor, made in the supplemental and amended petition, came too late. Plaintiff has answered the appeal praying, among other things, that he be awarded $147.17 for the confinement in the Saint Francis Hospital. In his original petition plaintiff alleged that he was hospitalized in September, 1957 "with pneumonia, and other illness". On the trial his physician testified that plaintiff had diverticulitis during that confinement which was aggravated by antibiotics used in treating plaintiff's pneumonia; that plaintiff continued to suffer with diverticulitis after being released from the hospital in September, 1957, and was hospitalized in the Saint Francis Hospital in Monroe as a result of this diverticulitis, i. e. as a continuation of the same illness ("other illness") that he had been treated for in the Natchitoches Hospital. Thus the diverticulitis and treatment thereof in the Saint Francis Hospital are compensable under the policy's insuring clause as a "loss resulting from illness, cause of which originates after this policy has been in effect more than fifteen days and causing loss commencing while the policy is in effect." Although the policy had lapsed on November 2, 1957, for nonpayment of premium, the illness for which the February, 1958 hospitalization was made originated while the policy had been in effect for more than fifteen days and had caused loss commencing in September of 1957 before the policy terminated. Thus the question is whether or not plaintiff properly and timely filed his amended and supplemental petition. This amended and supplemental petition was filed after the exceptions of no cause and right of action were tried and heard; after the case was remanded by the Second Circuit, supra; after answer had been filed to the original petition, but before trial on the merits. It set forth that the confinement in the Saint Francis Hospital was a continuation of the "other illness" (diverticulitis) which was present while confined in the Natchitoches Hospital; that this confinement was at a cost of $147.17 and prayed for judgment accordingly and in addition to the amounts originally prayed *90 for. In Breaux v. Laird, 230 La. 221, 88 So.2d 33, 37, Justice Simon concisely stated the current concept of amending pleadings, to-wit:
"It is well settled in our jurisprudence that amendments to pleadings should be permitted where they tend to further justice, cause no injury and are without prejudice to the right of the other party. Should the other party plead surprise, he may obtain time to prepare adequate defense. Our modern-day tendency is to relax the technical rules of pleading in order to arrive at the truth, afford a litigant his day in court and avoid a miscarriage of justice. This court has consistently recognized the right of the plaintiff to amend his petition with the leave of court, after issue joined, provided the amendment did not assert a demand different from the relief first sought or change the substance of the demand. * * *" (Citations in quoted material omitted.)
The case also stands for the proposition that although the amended petition increases the "moneyed demand", it may be allowed where the "cause of action and the very substance and nature thereof which give rise to this litigation has not been changed." In the case at bar the moneyed demand is increased. However, the substance and nature of the cause of action has not been altered. This action arose from "pneumonia and other illness", as alleged in the original petition, the result of which necessitated another confinement in a different hospital. The medical testimony is to the effect that the diverticulitis manifested itself during the hospitalization of September, 1957, and continued its manifestation after dismissal from the Natchitoches Hospital, culminating in the February, 1958 hospitalization in the Saint Francis Hospital for further treatment. Thus the amended and supplemental petition was properly allowed. The fact that the policy terminated for failure to pay premiums on November 2, 1957 is of no moment in view of the medical testimony to the effect that the diverticulitis was present and treated while the policy was in effect. Defendant's contention that plaintiff did not submit a claim for the second hospitalization is completely without merit. At page 72 of the transcript there is a copy of a letter that plaintiff mailed to defendant on March 10, 1958, in which defendant was notified of the second confinement and therewith was an attached statement as to costs thereof. Furthermore, the policy provides that claims may be made as soon as "reasonably possible" after the occurrence of the illness or confinement. (Insurance policy at tr. p. 10, under "Standard Provisions" No. 5, and 7, and under "Additional Provisions" No. 7.)
The hospitalization charges of $117.15 in February for the continued condition of diverticulitis was for three days, and included room and board charges of $11 per day (totalling $33) and laboratory, operating room, and medicines totalling $84.15. Under the policy limitations, quoted at the beginning of this opinion, the plaintiff's recovery is limited to $24 for his hospital room (3 days, at $8 per day), and to $48 for the other charges (if an insured is "confined to the hospital for five days or less", his recovery for such other expenses shall not "exceed six times the Daily Hospital Indemnity"). Thus the plaintiff is entitled under the terms of his policy to recover a total of $72 for this second hospitalization.
Plaintiff has asked that penalties and attorney's fees be assessed per LSA-R.S. 22:657. This demand will be denied as defendant did not act unreasonably. There was a serious question as to whether or not the policy provided for an amount in excess of that which was originally paid by defendant; there was serious question as to the accord and satisfaction; and just and reasonable doubt as to the time of origin of the diverticulitis which resulted in the confinement in the Saint Francis Hospital in Monroe.
*91 For the above and foregoing reasons the judgment of the District Court in the amount of $272.31 is amended so as to provide for an increase of $72 bringing the total to the full sum of $344.13 with legal interest from demand and in all other respects affirmed. Costs in all Courts assessed to defendant.
Amended and affirmed.

On Application for Rehearing.

En Banc. Rehearing denied.