141 So.2d 454 (1962)
Philip J. MILITELLO
v.
BANKERS LIFE & CASUALTY COMPANY.
No. 468.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 1962.
Rehearing Denied June 4, 1962.
*455 Brumfield & Organ, Donald V. Organ, New Orleans, for plaintiff-appellant.
Porteous & Johnson, Parnell J. Hyland, New Orleans, for defendant-appellant.
Before REGAN, YARRUT and JANVIER, JJ.
YARRUT, Judge.
This suit was brought originally by Plaintiff for certain benefits, plus penalties and attorney's fees, claimed to be due under two policies of insurance; a hospital indemnity policy, and a preferred family hospital-surgical policy, issued to Plaintiff by Defendant.
Plaintiff's wife, daughter and son were substituted as Plaintiffs when he passed away before the trial.
The district court rendered judgment in favor of Plaintiffs on the hospital indemnity policy for $785.67, and on the preferred family hospital-surgical policy for $698.00, plus x-ray benefits for $10.00, or a total judgment of $1493.67, along with costs and expert witness fee for $100.00. The court denied Plaintiffs the penalties and attorney's fees.
Both parties have appealed, Plaintiffs because they were refused penalties and attorney's fees, notwithstanding payment was refused by Defendant "without just and reasonable grounds," under LSA-R.S. 22:657; and Defendant because Plaintiffs' claim had arisen after the policies were cancelled, and after all claims arising prior to such cancellation had been paid.
The only question involved is whether the illness originated after cancellation. The facts, not disputed, are: The hospital indemnity policy covered indemnity for sickness contracted while the policy was in force, defining sickness, viz.:
"`Sickness' as used in this policy, means sickness, illness, or disease, other than mental disturbance without demonstrable organic disease, which is contracted and begins and causes loss beginning while this policy is in force. Normal childbirth is not sickness. Any one sickness shall be construed to include sickness from the same cause at various times or sickness from various causes at the same time."
The preferred family hospital-surgical policy insures against certain hospital and surgery expenses caused by "sickness, illness or disease which is contracted and begins and causes loss beginning while the policy is in force and after it has been in force for not less than thirty days from the date of the issuance * * *."
Sickness as used in the preferred family hospital-surgical policy is defined, viz.:
"`Sickness' as used in this policy means sickness, illness, or disease, which is contracted and begins and causes loss beginning while this policy is in force and after it has been in force for not less than thirty days from its date of issue. Any one sickness shall be construed to include sickness from the same cause at various times *456 or sickness from various causes at the same time."
The hospital-surgical policy provides for hospital residence expenses up to 100 hospital days for any one accident or any one sickness. The hospital indemnity policy provides indemnity of $100.00 per week, up to 50 weeks, when insured is confined to the hospital as result of any one accident, or any one sickness.
The policies were in effect from July 30, 1957, to March 5, 1959, when Defendant cancelled both, as was its undisputed right.
On December 22, 1958, while these policies were in force, insured was confined to Touro Infirmary, New Orleans, for a coronary condition; and was so confined until January 18, 1959. Defendant paid benefits under that period of hospitalization for 27 of the 100 allowable days; and under the hospital indemnity policy paid three weeks and six days of the 50 weeks allowable benefits. Insured was re-hospitalized on February 16, 1959, until February 27, 1959, for the same heart condition.
Defendant paid the policy benefits for February 16 through 27, 1959. On February 16, 1959, when insured was required to go into Baptist Hospital for his second period of hospitalization, Defendant wrote insured it was cancelling his policies, and would not accept any further premium payments. Defendant specifically advised him that the cancellation was "without prejudice to any loss beginning prior to the expiration of the time for which premiums had been accepted."
On March 2, 1959, Defendant wrote Baptist Hospital (copy to insured) giving a complete outline of the policy benefits, with the advice that insured was entitled to 100 days hospital expenses for any one sickness; that he had already expended 27 days, and had 73 more days confinement due to "this illness." Defendant also advised the Hospital that insured's hospital indemnity policy provided indemnity for $100.00 per week for 50 weeks due to any one sickness, and that insured had received three weeks and six days of hospital confinement due to that illness. A copy of this letter invited insured's wife to file a claim for his hospital confinement. This was done, and the claim for the second hospitalization period was paid by Defendant. After discharge from the Hospital insured went home. On March 18, 1960 insured re-entered Baptist Hospital and remained there until May 9, 1960. A claim was made to Defendant for this hospitalization period as the remaining benefits provided for any "one sickness." On June 2, 1960, Defendant, by letter, denied the claim. The wife wrote Defendant directing its attention to its letter of May 2, 1959, and particularly to the admission that "we are able to provide benefits for 73 more days of confinement due to this illness." Defendant, by letter (June 16, 1960), advised insured was only covered for the period during which he was paying premiums, and it would not consider losses after the termination of the policy.
During the time of the hospitalization coverage the insured suffered hardening of the arteries, for which he had two periods of hospitalization, and for which Defendant paid the benefits. The insured was still entitled to benefits for one sickness, within the meaning of the terms of the policy, that "sickness" as used in the policy means sickness contracted and causing loss while the policy is in force; and that any one sickness is construed to include sickness from the same cause at various times, or sickness from various causes at the same time.
The undisputed medical testimony is to the effect that this was one disease throughout, the basic underlying cause being hardening of the arteries, the immediate result being coronary thrombosis. Insured never recovered as a result of any of these hospitalization periods. It was during the course of this illness that Defendant chose to cancel the policy, without prejudice to any loss beginning prior to the expiration *457 of the time for which premiums had been accepted. There is no question that this loss occurred around December 22, 1958, and was one sickness within the meaning of the policy.
Dr. Eyrich, for Plaintiffs, an internist, the only expert to testify, in so many words makes clear that insured's three episodes of illness and hospitalization stemmed from the initial illness contracted during the period when the policy was in effect and before its cancellation, as follows:
"Q. The times that you saw him when you had him in the hospital in 1960 was for the same ailment you had him hospitalized for in 1959.
"A. Yes.
"I think the basic underlying process was arteriosclerosis, which produced myocardial infarct. The actual myocardial infarct occurred within one day of admission, or the morning of the second day in the hospital.
"Q. Is that just a step in this progressive condition?
"A. Yes.
"Q. That is the first time that you had made a diagnosis of coronary thrombosis?
"A. Oh, no.
"Q. That this man has sustained a coronary thrombosis while he was under your care, is that right?
"A. I made a diagnosis of one having occurred at least on February 19, 1959.
"Q. It will be noted in the record, during the times you were seeing him, that you were treating him for this heart condition?
"A. Right.
"Q. Was that the only ailment?
"A. I feel it was the same ailment throughout."
Defendant contends that, since there was no claim pending on the termination date, the reason for the subsequent hospitalization is immaterial. This is in direct conflict with the definition of "sickness" in the policy, namely, that "any one sickness shall be construed to include sickness from the same cause at various times."
Defendant further contends that the sickness was not the same, because one was an anterior myocardial infarct, while the last was a posterior myocardial infarct or, that that one affected the front and the other the rear of the heart. This appears to be a distinction without a difference, developed by Defendant without any supporting medical testimony.
As the disability arose while the policy was in effect the subsequent cancellation could not affect a claim which had already arisen. Pete v. Metropolitan Life Insurance Co., La.App., 171 So. 868; Dossey v. Life & Casualty Insurance Co. of Tennessee, La.App., 177 So. 427.
We agree with the district court in allowing recovery under the policies. The remaining issue is whether penalties and attorney's fees should be allowed.
With respect to the statutory penalties (under LSA-R.S. 22:657) where the insurer fails to make payment upon "just and reasonable grounds, such as would put a reasonable and prudent business man on his guard," we agree with the district court that the penalties and attorney's fees should not be allowed.
In considering the statutory basis for assessing penalties and attorney's fees, we find in LSA-R.S. 22:656 (limited to life insurance) that penalties are assessable only if the failure is "without just cause." Under LSA-R.S. 22:657 (limited to health and accident policies) the penalties are as stated supra. LSA-R.S. 22:658, provides that all insurers, issuing any type of contract other *458 than those specified in LSA-R.S. 22:656 and 22:657, who fail to make payment within the time specified, are subject to penalties if such failure is found to be "arbitrary, capricious, or without probable cause."
While the district court and we agree the Defendant was legally wrong in refusing payment we, in agreement again with the district court, cannot say such refusal was unreasonable, arbitrary or capricious; otherwise the insurer in a justifiable, though unsuccessful, contest over its liability, would be assessed the statutory penalties. Such holding would, in effect, deny an insurer its day in court. Each case must depend upon its own facts and circumstances. Jones v. Standard Life & Accident Insurance Co., La.App., 129 So.2d 84; Thibodeaux v. Pacific Mutual Life Insurance Co., 237 La. 722, 112 So.2d 423, 75 A.L. R.2d 1228; Finley v. Hardware Mutual Insurance Co., 237 La. 214, 110 So.2d 583.
In view of the 15-month interval between the second and last recurrences of the same illness Defendant was justified in resisting the claim and in requiring judicial proof.
Penal and punitive statutes are strictly construed against those who invoke them. Such statutes are not favored by the courts. Luce v. New Hotel Monteleone, La.App., 106 So.2d 121.
It would be inequitable to impose the statutory penalties here, in view of the finding by the district judge and two of the three judges of this appellate panel that insurer's refusal was neither unreasonable, arbitrary or capricious.
In the case of Phelps v. Southern National Insurance Company, La.App., 83 So.2d 463, the court held that the insurer could not escape liability for statutory penalties (under LSA-R.S. 22:657) for delay in payment of claim, merely because insurer misinterpreted cause of insured's illness and legal effect of policy provisions, as insurer must take the risk of such interpretation.
The difference between the cited case and this case is that the insurer recognized liability and paid for the original illness without question, only challenging the last episode occurring more than 15 months after the last payment; while in the cited case, the insurer refused ab initio to recognize the claim or make any payment based on its misinterpretation of the policy and the origin of the disease. McKinney v. American Security Life Insurance Co., La. App., 76 So.2d 630; Strauss v. New York Life Insurance Co., 204 La. 202, 15 So.2d 61.
For the reasons assigned, the judgment of the district court is affirmed; Defendant to pay all costs in district court, and each party to pay their respective costs on appeal.
Affirmed.
JANVIER, Judge (concurs).
Very hesitantly I concur in the opinion and decree of my associate. I do so because I see no other solution to a very vexing problem. There were two policies issued by the defendant company and in each it was provided that there should be no recovery except where the insured was hospitalized, that is to say, actually confined in a hospital. Each of these two policies provided that at the option of the Company it could refuse to renew the policy at the expiration of any premium period, which was one month.
Though I concur in what is said in the controlling opinion, I think that there are two facts which should be accentuated. The first is that the Company did not attempt to "cancel" the policies but notified the insured that it would not "renew" the policies at the expiration of the then current premium term. The second is, as already stated, that there could be no recovery under either except for such period as the insured might actually spend in the hospital as a result of illness.
I think that the question of liability is a very close one and I repeat that I concur only because I see no other solution.
*459 It is conceded that but for the heart condition for which on two occasions the insured was hospitalized, the insured at the expiration of the premium period could have refused to renew either of the policies. It is also conceded by plaintiff that the insurer could have refused to renew the policies except insofar as a subsequent hospitalization might result from the same illness which had caused hospitalization on the first two occasions. If that is true then we have the very interesting situation that the insured could refuse to renew the policies except insofar as further hospitalization might result from the first illness with the necessary result that the insured might have lived for many years without paying any additional premiums and would have been protected against loss caused by hospitalization resulting from that illness and during all of that period, however long it might have been, there would be possible liability in the insurer and no premiums paid whatever. As a matter of fact the insured here did live for more than a year after the second hospitalization and there was no certainty whatever that he would ever have to go back to the hospital for that same illness.
Let us suppose that instead of suffering from that one illness the plaintiff, on different occasions had suffered from several different illnesses, such as tuberculosis, asthma or any other disease and had been hospitalized for a few days as a result of each. If the conclusion which we have reached here is correct and the Company at the end of all of these several different illnesses had chosen not to renew the policies, it could have done so and no further premiums could have been collected; however, if at any time in the future the insured should be hospitalized for any one of the previously diagnosed illnesses, there could have been recovery under the policies.
There is one other fact which I think throws some doubt on the question of liability and that is the question of whether or not the illness from which the insured ultimately died was the same illness which had caused the previous hospitalization. From the record as it now stands, we can reach no other conclusion than that it was for the reason that only one doctor testified and, when asked whether it was the same illness, he said: "I think so." He did not evidence absolute certainty and, in fact said that it was possible that the insured might have lived out the remainder of his life without a recurrence of that illness. Had there been any countervailing evidence it is possible that it could have been held that it was not certain that the death resulted from the same illness which had caused earlier hospitalization.
However, after giving much thought I am of the opinion that since the policies provided for a maximum term of hospitalization and provided that in the event of any illness causing hospitalization, the plaintiff, for each period of hospitalization, might recover, I feel that the judgment is correct. I see no justification whatever for the allowance of the penalty or the attorney's fee.
I concur.
REGAN, Judge (dissents).
I respectfully dissent from that part of the majority opinion and decree that affirms the trial court's refusal to award plaintiff the statutory penalties and attorney's fees, authorized by the provisions of LSA-R.S. 22:657.
Every dissenting opinion is necessarily a declaration that it is the belief of the author thereof that the law has been erroneously applied to the facts by the majority opinion. However, it is not every time that a slight or insignificant difference of opinion exists that a judge who disagrees with the majority is justified in dissenting. The matter should either be of sufficient judicial or legal importance to justify the placing of his dissent in the record, so as to facilitate the review thereof by a higher court, or the matter should be of such a nature *460 that the dissenting judge deems it in the interest of the public welfare, and this is the final cause of all law, to point out the injurious consequences which he conscientiously believes will result from the conclusion reached in the majority opinion.
The foregoing rationale has provoked this dissent, especially since a hospitalization insurance policy, the ownership of which has become a family necessity, forms the subject matter of this unnecessary dispute.
The injurious consequences to the public welfare, without belaboring the point, are made quite obvious by the result reached in both the majority and concurring opinions.
True, the plaintiff after a tortuous trial in the lower court and here, has won his lawsuit in the amount of $1493.67 for hospitalization insurance and disability benefits which he should have received on request, but has he been made whole, in view of the expenses, legal and otherwise, incurred, as the law intended, especially when an insurer, absolutely, without reason either in fact or in law, has arbitrarily refused to honor a just claim in conformity with the specific provisions contained in its contract of insurance?
In any event, this case affords a classic example wherein statutory penalties and attorney's fees should be imposed without equivocation upon the defendant insurer. In fact, the majority opinion dresses the legal stage, so to speak, for the imposition of the penalties, and then avoids the conclusion that inevitably flows from the judicial rehearsal thereof.
In conformity with the wording of the statute referred to in the first paragraph hereof, an insurer is required to pay all claims arising under the terms of health and accident contracts, unless it predicates the refusal thereof on "* * * just and reasonable grounds, such as would put a reasonable and prudent business man on his guard * * *."
It is absolutely necessary to briefly review the facts hereof to determine whether the insurer's refusal to honor its contract with the plaintiff was based on "just and reasonable grounds".
In August 1957, the plaintiff obtained two health and accident policies from the defendant, which were renewable from month to month at the option of the insurer. In essence, they provided that the insured was to be reimbursed for certain hospital and surgical expenses in the event of sickness and further, that he was to receive disability income from the defendant for the time that he was hospitalized.
Sickness, as defined by both policies, included:
"* * * Any one sickness shall be construed to include sickness from the same cause at various times or sickness from various causes at the same time."
Plaintiff was first hospitalized from December 22, 1958 through January 18, 1959 for treatment of a heart condition that developed as a result of the hardening of the arteries.
His second period of hospitalization for the same illness began on February 16 and ended on February 27, 1959. Plaintiff was paid the benefits due as a result of his first two hospital confinements.
On the first day of plaintiff's second hospitalization, namely, February 16, 1959, the defendant informed the plaintiff that his policies would not be renewed at the end of the thirty day period during which the second hospitalization began. The letter addressed to him reads in part:
"In reviewing your recent case, we have concluded the premium you are paying is not enough for the future risk. There is not sufficient data available to quote an intelligent rate on the increased hazard."
On March 2, 1959, the defendant, as incongruous as this appears, addressed a letter to Baptist Hospital wherein it advised the proper employee thereof that the plaintiff *461 was entitled to hospital benefits for 73 additional days under one policy and 46 weeks and 1 day of disability income under the other.
On March 4, 1959, plaintiff's wife tendered the premium due to defendant for the thirty day period beginning the following day; however, the defendant returned her check on March 14, 1959.
Plaintiff was hospitalized for the final time between March 18 and May 10, 1960 for the same sickness; however the defendant refused to pay plaintiff the benefits due because it insisted the insurance was not in force when the loss occurred.
In response to this denial of liability, plaintiff's wife addressed another letter to the defendant in which she reminded the insurer that by its own admission, in the letter to Baptist Hospital, there were 73 days left for which plaintiff was entitled to hospital benefits and some 40 weeks of disability income due.
On June 16, 1960, the insurer replied to Mrs. Militello's inquiry by stating that it was only liable for any loss incurred prior to March 5, 1959, the date the insurer elected to withdraw coverage. The defendant further stated that plaintiff was only entitled to coverage for a loss during the period in which he was paying premiums.
Thus, the conclusion is obvious that defendant refused to consider plaintiff's proof of loss solely upon the ground that the policy was not in effect when the last hospitalization occurred.
Despite the fact that the policies clearly provided coverage for "Any one sickness * * * from the same cause at various times * * *," the defendant made no effort of any sort to negate plaintiff's claim that the third hospitalization which was ordered by plaintiff's physician was due to the same condition which required his hospitalization on the first and second occasion.
In view of the fact that the defendant drafted the contract which provides coverage for the same illness at various times, and it did not see fit to place a time limit upon the term "various times", it appears that plaintiff was entitled to the remainder of his benefits outlined by the contracts since the loss occurred while the policies were still in effect. In denying liability, the defendant asserted that plaintiff could not recover benefits for a hospitalization that occurred when plaintiff was not paying premiums.
It will be recalled that plaintiff did tender a premium after defendant advised plaintiff it would not renew the policies and that defendant refused to accept it. If defendant were permitted to legally exercise its option not to renew at the end of a thirty day period once the insured suffers an illness, then it could limit its maximum coverage to a thirty day disability period, despite the fact that one policy assures the insured of coverage for a maximum of 100 days and the other, of disability income for a maximum of fifty weeks.
It is not disputed that the defendant had a right to exercise the option not to renew; however, it would be unconscionable to permit the insurer to escape liability for a claim arising prior to the cancellation. The jurisprudence of this state is clear to the effect that an insurer is liable for any benefits due under a health and accident policy when the loss is incurred during the existence of the contract.[1]
Therefore, I think the only just cause for refusal in this case would have been an assertion by the defendant, based on reliable medical advice, that the third hospitalization was not a result of the same illness that plaintiff had suffered and for which he had been reimbursed when the policies were in effect. Since this was not the reason the insurer gave, obviously because none existed, for refusing the claim, it acted in anything but a reasonable and prudent manner *462 in rejecting plaintiff's claim and compelling him to institute suit.
On the trial of this matter, the defendant exerted a belated and laborious effort to establish that plaintiff's third hospitalization was not the result of the same illness that had required hospital treatment the first and second time. Even if we were to assume arguendo that this defense could possibly be urged for the first time on the trial hereof in order to exculpate the unsuccessful defendant from liability for penalties and attorney's fees, the defendant herein would still not prevail because it relied exclusively on cross-examination of the plaintiff's doctor, which, as the record shows, was not successful in attempting to establish some semblance of a reason for refusing payment.
The medical testimony introduced on the plaintiff's behalf is uncontradicted that the insured was hospitalized all three times for a heart condition which was the same progressive ailment caused by arteriosclerosis. While the treating physician described myocardial infarctions and a coronary thrombosis as the conditions for which plaintiff was being treated at various times, he repeatedly emphasized that all of these conditions were manifestations of the same progressive illness, and, to reiterate for the purpose of emphasis, this evidence stands absolutely uncontradicted in the record.
The facts of this case fall squarely within the rationale emanating from the case of Phelps v. Southern National Insurance Company[2], wherein the court imposed statutory penalties and attorney's fees on the insurer for rejecting its insured's claim without making an adequate investigation before so doing.
The majority opinion concludes that statutory penalties should not be imposed in this instance because to do so would, in effect, deny the insurer its day in court. I interpret this statement to mean that the author thereof is absolutely impressed by the fact that there was a fifteen month interval between the second and last recurrences of the same illness and, therefore, he believes for this reason that the defendant was justified in resisting the claim and in requiring judicial proof.
For the sake of accuracy, it should be noted that the interval between the second and third recurrence is thirteen and not fifteen months; however, this time element is in reality of no significance. Since the policy specifically provides that sickness from the same cause at various times is covered, the insurer had a duty to negate the possibility that the sickness causing the third hospitalization did not result from the same illness.
Since the insurer based its refusal to pay on the fact that the policy had not been renewed, and did not even attempt to interview plaintiff's treating physician to determine whether the third hospitalization resulted from the same illness, nor to obtain the opinion of another medical expert in this connection, the reasoning of the majority opinion in this respect is therefore vitiated.
The majority opinion states that the court must analyze the facts of each case in order to determine whether the punitive statute will be construed against the insurer. This assertion is absolutely correct; however the authorities cited therein to support the foregoing statement go further and actually support the rationale of this dissent. These cases all hold that a defendant insurer is subject to statutory penalties only if its denial of liability is not predicated upon either a question of fact or law that is the subject of a valid dispute.
In Jones v. Standard Life and Accident Insurance Co., La.App., 129 So.2d 84, penalties were not imposed for two reasons: (1) there was a serious legal question of whether the plaintiff's acceptance of a part payment constituted accord and satisfaction for the entire claim, and (2) there was just and reasonable doubt as to the cause and origin of the disease.
*463 In Thibodeaux v. Pacific Mutual Life Ins. Co., 237 La. 722, 112 So.2d 423, 75 A.L.R. 2d 1228, the policy at issue contained a reduction clause which provided the accident indemnity policy did not cover any loss "which results from or is contributed to by (a) sickness or bodily or mental infirmity * * *". The plaintiff therein suffered the aggravation of a spondylolysis, a congenital defect, which defendant asserted was excluded because the congenital condition contributed to the disability. Although the plaintiff recovered, the court refused to impose penalties because the insurer had a right to dispute the medical question and it supported its refusal to pay as reasonable by establishing that it had relied on medical advice.
Finally, in this connection, the majority opinion cited the case of Finley v. Hardware Mutual Ins. Co., 237 La. 214, 110 So. 2d 583. Again the court refused to impose penalties because the defendant relied on the opinion of a physician that plaintiff was not disabled, and in addition thereto, plaintiff had worked continuously for six months after the accident from which plaintiff had asserted he became disabled.
Therefore, I have no quarrel with the results of the foregoing cases in which the courts properly disallowed penalties; but in all three, I reiterate, there was a serious defense which not only justified, but compelled resort to litigation. In this case the defendant refused to honor its contract with the plaintiff both on unjust and unreasonable grounds, because it possessed neither a legal nor a medical defense.
The next theory the majority opinion advocates in support of its refusal to impose penalties is that it would be inequitable to do so in view of the finding by the district judge and two of the three appellate judges that the insurer's refusal was neither unreasonable, arbitrary or capricious. This, of course, is pure sophistry. If this conclusion be true, then the jurisprudence emanating from our appellate tribunals would be inequitable in each instance where a court of appeal which had affirmed the lower court, was reversed by the supreme court on either a question of fact or of law. Our judicial system contemplates the possibility of both factual and legal error, otherwise why should our adjective law provide for, and the law interpretative thereof favor, appeals posing either question for appellate consideration.
This sophistry is further exposed by the facts of the case before us, which clearly demonstrate that the insurer's denial of liability was predicated upon its arbitrary conclusion that there was no coverage and that it made no effort to discover whether the third hospitalization resulted from the same illness that began when the policy was in effect.
Finally, the majority opinion distinguishes the facts in the case at bar and those in the Phelps case, cited supra, in this manner:
"The difference between the cited case and this case is that the insurer recognized liability and paid for the original illness without question, only challenging the last episode occurring more than 15 months after the last payment; while in the cited case, the insurer refused ab initio to recognize the claim or make any payment based on its misinterpretation of the policy and the origin of the disease.
"McKinney v. American Security Life Insurance Co., La.App., 76 So.2d 630;
"Strauss v. New York Life Insurance Co., 204 La. 202, 15 So.2d 61."
While it is true that no payment was made to the insured before the matters were litigated in the two above cited cases, they certainly are not authority for the distinction made in the majority opinion. Both cases cited again merely stand for the proposition that penalties will not be imposed where the question of coverage could *464 seriously be disputed. In the Strauss case, the insurer denied liability because the plaintiff's own physician indicated plaintiff was suffering a temporary disability when the coverage was provided for permanent disability. In the McKinney case, the insured suffered a skin disease caused from nervousness and the policy excluded coverage for nervous disorders. Since the question of coverage was close, no penalties were imposed.
In view of the fact that the insurer has no valid defense to this litigation and that it failed to investigate whether plaintiff was entitled to recover hospitalization and disability benefits which accrued as the result of one illness for which its policy provided coverage, its actions are most unreasonable and the court's refusal to penalize the defendant therefor is contrary to the rationale of LSA-R.S. 22:657; to reiterate, this case affords a classic example of when penalties and attorney's fees must be imposed upon the insurer in conformity with the intent of the legislature in the interest of the public welfare.
Rehearing denied; REGAN, J., is of the opinion that a rehearing should be granted.
NOTES
[1] Pete v. Metropolitan Life Insurance Co., La.App., 171 So. 868; Dossey v. Life & Casualty Ins. Co. of Tennessee, La.App., 177 So. 427.
[2] La.App., 83 So.2d 463.